1  NADINE HAYS
2  370 Highland Hills Drive
   Camarillo, CA  93010
3  (805) 484-4452
   (818) 474-7676 – Fax
4  NadineHays@aol.com
   In Pro Se
5

6

7

8              **UNITED STATES DISTRICT COURT,**

9              **SOUTHERN DISTRICT OF NEW YORK**

10

11 | NADINE HAYS, an individual;            | Case No.
12 |                                        | Assigned for all purposes to:
   |          Plaintiff,                    | Judge:
13 |                                        | Dept:  Currently Courtroom
14 |          vs.                           | **COMPLAINT FOR CIVIL RIGHTS**
15 |                                        | **VIOLATIONS; NEGLIGENCE**
16 | CITY OF NEW YORK ("NYC")               | **DEMAND FOR JURY TRIAL**
17 | NEW YORK POLICE DEPARTMENT ("NYPD")    | Original Complaint Filed:
18 | OFFICER DENNIS BYRNES ("BYRNES")       | Trial Date:                None
   |                                        | Discovery Cut Off:         None
19 | OFFICER KINO COX ("COX")
20 | DETECTIVE RICK LEE ("LEE")
21 | DOES 1-10
22 |          Defendants

23

24

25

26 ──────────────────────────────────────

27     **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

28                        1                        12/5/2014

## INTRODUCTION

1. This litigation arises out of the custodial arrest of Plaintiff Nadine Hays in the early afternoon of September 17, 2013 at Zuccotti Park in New York City, New York and the the prosecution of the Plaintiff associated therewith.

2. Plaintiff was detained in custody for approximately 24 hours until mid-day on September 18, 2013. Plaintiff made her first appearance in Court and was arraigned on September 18, 2013 in the Criminal Court of the City of New York, County of New York, and State of New York and was then released without bail. Plaintiff was subsequently directed to make her next appearance on October 30, 2013.

3. Plaintiff was represented in Court by Wylie Stecklow on October 30, 2013, at which time the District Attorney's office agreed to an Adjournment In Contemplation Of Dismissal ("ACD"). On April 29, 2014 the case was dismissed and sealed.

4. This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States.

5. The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of her rights.

## JURISDICTION

6. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Sections 1983, 1985, 1987 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

7. The Plaintiff also invokes the jurisdiction of this court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

8. This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

## THE PARTIES

9. Plaintiff Nadine Plaintiff is a citizen of the United States and is a resident in the state of California, the city of Camarillo, and the county of Ventura.

10. Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the state of New York and which is authorized with, among other powers, the power to maintain a Police Department for the purpose of protecting the welfare of those who reside in the City of New York.

11. Defendants Officer Dennis Byrnes, Shield #25055; Officer Kino Cox, Detective Rick Lee, Officer Doe 1 and Officer Doe 2 are New York City Police Department officers and agents and employees of the City of New York.

12. Although the Defendants' actions and conduct herein described were unlawful and wrongful and otherwise violated the Plaintiff's rights as guaranteed under the laws and Constitution of the United States, they were taken in and during the course of their duties and functions as New York City Police Department officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.  All Defendants are sued in their individual and official capacities.

## NOTICES OF CLAIM

13. On October 30, 2013, and within 90 days of the accrual of her causes of action herein, Plaintiff served on the Comptroller of the City of New York a Notice of Claim setting forth the time when, the place where, and the manner in which, her claims arose.

14. More than 30 days have elapsed since Plaintiff's Notice of Claim was served upon Defendant the City of New York and said Defendant has been neglected and/or refused to make an adjustment or payment.

## ALLEGATIONS

15. This litigation arises out of the Plaintiff's custodial arrest on Tuesday, September 17, 2013 at around 3 pm on the corner of Liberty and Broadway by Zuccotti Park in the City of New York.

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

16. Plaintiff had been in Washington DC the week prior and had been privileged to attend a very special presentation in Arlington, Virginia by the 9-11 Truth organization. This conference had professional speakers that were scientists, architects, and engineers that testified that the story the American people had been fed regarding what happened in New York City on September 11, 2001 could scientifically never have happened.

17. Plaintiff had always known that the demolition of the World Trade Center towers in New York City was a planned demolition, but the big questions were always, "Why?" "By whom?" and "How?" Many of Plaintiff's questions had been answered at the conference and she felt that since she was going to be at Zuccotti Park, which is a few blocks away from where the towers fell, that the information she learned at the conference was crucial for the public to hear.

18. Plaintiff's trip to Washington DC and New York City had not been planned in advance and was a "spur of the moment" trip for her to make.

19. Since Plaintiff had become an educational political activist in 2011, she had supplies with her when she arrived in New York City on September 17, 2013. In her car she had a dolly to carry her supplies, a portable amplified speaker and microphone, a plasma screen monitor, a deep cycle battery, an inverter, and her computer with all of her educational programing.

20. When Plaintiff entered New York City on the morning of September 17, 2013, she could not believe the large presence of police officers, vans, cars, and even buses. This was definitely a means to intimidate those who had decided to come into New York City to celebrate the two year anniversary of Occupy Wall Street. The activists were entertaining and peaceful, yet the large presence of law enforcement officers stifled the spirit of the day. Such harassment was indeed their intention and was indeed an abuse of process.

21. After parking her car in a parking garage on Murray Street, Plaintiff began her journey to Zuccotti Park.

22. Plaintiff passed a NYPD officer . She had some music playing on her "roadshow"; it was the Bill of Rights set to music. She asked if there was a problem with her sound system and the officer said "No, you're fine."

23. When Plaintiff arrived at Zuccotti Park, she began her presentation. People in the area gathered to listen to what she had to share with them.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

24. Plaintiff was finally approached by an officer, Doe 1, that asked if she had a permit for the amplified sound. Plaintiff's response was, "Yes...it's called the First Amendment to the U.S. Constitution."

25. There was another officer that had the word "LEGAL" written on the back of his jacket. His name is unknown at this time and he will be referred to as Doe 2.

26. Plaintiff tried desperately to communicate with Doe 1 and Doe 2 and they refused to talk to her. She had case law with her that showed that amplified speech or music is considered protected by the First Amendment as long as it is not so loud as to be causing a disturbance of the peace.

27. Suddenly the officers in the area surrounded Plaintiff, she was handcuffed with heavy-duty plastic zip-lock ties behind her back, she was pulled backwards by the zip-lock ties, and finally lifted, once again by the zip-lock ties, into the awaiting paddy wagon. The force of the zip-lock ties cut into her very arthritic wrists and caused Plaintiff such excruciating pain that she screamed and began to cry uncontrollably. Plaintiff's pleas for help were completely ignored. In fact, the more Plaintiff cried the crueler the officers became.

28. There was no lawful basis to seize and arrest Plaintiff.

29. Plaintiff was a 61 year old grandmother of 9 who was physically disabled. In 2009 she had a complete left knee replacement and in August, 2014 she had a complete right hip replacement. Plaintiff has severe arthritis in her hands and wrists, so the mere act of handcuffing her and dragging her backwards caused excruciating pain and made Plaintiff scream in agony.

30. Plaintiff was placed on a painted bench in the paddy wagon with no seatbelt protection. Defendant COX, the driver of the vehicle, drover very erratically and Plaintiff was fearful of falling off the bench or hitting her head on the wall of the truck. Plaintiff asked Defendant COX to slow down and to drive more carefully, but the driving became even worse.

31. Plaintiff arrived at what she believes was the First Precinct. She was walked into an open air courtyard and finally was taken into the building. An officer removed the zip-tie cuffs

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

and Plaintiff was placed in a cell by herself.  After an hour or two Plaintiff was placed back into the paddy wagon by Defendant BYRNES, the arresting officer, and she was transported to the Manhattan Detention Complex.  While Plaintiff was at the Manhattan Detention Complex her picture and fingerprints were taken without her permission.

32. BYRNES took Plaintiff to the District Attorney's office.  BYRNES went in to talk with a representative while Plaintiff was watched in the waiting room.  Plaintiff later found out the reason for their visit was so that the D.A. could determine what the charges against Plaintiff were going to be. Plaintiff was later charged with:

   a.  AC 10.108, a sound ordinance violation for operating a sound production device in a public area, which was not an arrestable charge;
   b.  PL 240.20 05 Refusing to move which was not an arrestable charge; and
   c.  PL195.05, a misdemeanor and arrestable charge for an obstruction of governmental administration.

      (The police officers, and BYRNES in particular, had actually violated the disorderly conduct law, as they had engaged in disruptive conduct (the arrest of Plaintiff) with the intent and effect of impeding and disrupting the orderly conduct of a lawful public gathering.)

33. Plaintiff was then taken to the courtroom by Defendant BYRNES.  They had not been in the Courtroom long before Defendant BYRNES told her to get up.  They then proceeded to walk outside.  Plaintiff was then placed back into the paddy wagon but was not told why.

34. The vehicle finally stopped in front of Bellevue Hospital.

35. Once entering Bellevue Hospital, Plaintiff had her vitals taken.  Her blood pressure was about 145/91 which was very high for her.  Since Plaintiff was fairly active, her normal blood pressure had been around 120/65.

36. Plaintiff was then taken to the psych ward where she was made to wait for hours. Plaintiff wore contact lenses and needed to remove them from her eyes.  Defendant BYRNES refused to assist her when she asked for a container with water.  After pondering on the situation, Plaintiff finally made due with a tissue she had in her pocket and a piece of saran that had been on a cheese sandwich.

37. Plaintiff had heard horror stories about what had happened to activists in the psych ward at Bellevue and wanted to leave as soon as possible.  She told Defendant BYRNES that she wanted to be taken to Lenox Hill Hospital.  She told Defendant BYRNES that she

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

would pay for the transportation and for the medical evaluation. Defendant BYRNES ignored Plaintiff's requests.

38. Plaintiff was finally interviewed by the professionals and released.

39. Plaintiff was then placed back into a vehicle and taken back to the Courthouse. While Plaintiff was in the hallway Defendant BYRNES informed her that they needed to take some more pictures.

40. Plaintiff was then taken to a room where an officer asked her to take off her earrings. Defendant BYRNES uncuffed Plaintiff so she could do so. When the right side photo was being taken, Plaintiff finally realized that there was a difference in the type of photography equipment being used. Plaintiff asked the officer if they were doing biometrics. The officer confirmed that they were. Plaintiff told them that she did not give them permission to do so. The officer's reply was that if Plaintiff did not cooperate that she would not leave the facility. With that threat, Plaintiff finally gave in because she knew that psychologically she would not last much longer.

41. The officer taking the pictures then picked up a hand-held device and started to approach Plaintiff's face with it. Plaintiff immediately knew that what he held was an iris scanner. Infuriated at the violation of her privacy, Plaintiff exclaimed: "Absolutely not. What to do want me to do...spread my legs and let you do it to me?" The young male officer got the message and backed off.

42. Defendant BYRNES was suddenly triggered. He slapped a handcuff on Plaintiff's left wrist and threw her up against the wall. Plaintiff was fearful for her life and her bladder completely emptied all over her. Defendant BYRNES threw the other cuff on Plaintiff's right wrist, once again with both hands being behind her back.

43. Defendant BYRNES then began dragging Plaintiff backwards down the hall. Plaintiff not only feared for her life, but was also in excruciating pain due to the pressure of the handcuffs on her arthritic wrists. Plaintiff was drug backwards through a court in open session, screaming in pain and crying as she was so distraught at what was happening to her. The judge in the courtroom, later discovered to be Judge Johnson, did nothing.

44. Plaintiff was then taken into another courtroom where she waited for her name to be called. The DA offered time served as a plea bargain; Plaintiff did not accept.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

45. Even though Plaintiff had been given the impression that she had been arrested for the amplified sound without a sound permit, she later discovered that this was not an arrestable offense.

46. Jonathan Stonbely from the Legal Aid Society assisted Plaintiff in front of the judge. Plaintiff was pre-arraigned and her next appearance date was set for October 30, 2013. Plaintiff was released with no bail being charged. The only thing Plaintiff was given before leaving the courtroom was a property receipt, which did not have a complete listing of all of her property that had been taken.

47. As Plaintiff was leaving the courtroom she noticed Defendant BYRNES rush out the door. No offer was made to help her get her possessions back or to give her a ride back to the First Precinct so she could get her money and ID.

48. Plaintiff had been left in a courthouse, drenched in urine, with no ID and no money. Her mind was totally scrambled because of the excessive force that had been used against her. Plaintiff could not even think about what to do next. She crumbled to the ground and cried uncontrollably for what seemed to be eternity.

49. Eventually Plaintiff calmed down. She was finally able to control her emotions. She decided to try to locate her ID and money. After much inquiry Plaintiff decided that her property was probably at the 1st Precinct. She asked for directions and then began her journey on foot.

50. Plaintiff finally located the 1st Precinct. An officer took Plaintiff's receipt and, after a short wait, brought Plaintiff a piece of cardboard to which all of her credit cards, as well as her driver's license, had been taped. All of her money was gone, however, including some irreplaceable bills.

51. The woman that gave Plaintiff her credit cards and driver's license had printed up some additional property receipts. The receipts were not accurate. Some items were not even listed on the receipts. Those items that were listed on the receipts were scattered in warehouses throughout the city.

52. Plaintiff walked back to the courthouse. She tried to make a few phone calls on her credit cards, but after a few calls the cards were declined.

53. Plaintiff went down to the local Chase Bank and, using the ATM machine was able to get $200 in 20 dollar bills from her account. When she returned to the courthouse she could not find anyone that could give her change so she could use the pay phones. Once again Plaintiff crumbled on the outside stairs to the courthouse and cried.

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

54. After regaining her composure Plaintiff was finally able to get some change from some women that were passing by the courthouse. She went into the courthouse once again and called her husband, who told her to call the National Lawyer's Guild ("NLG"). Her husband provided her with their phone number.

55. Plaintiff called the NLG and Susan Howard ("HOWARD") answered the phone. Although she was very kind and comforting to Plaintiff, Plaintiff once again broke down in tears. Before Plaintiff finished her conversation with HOWARD, 3 volunteers from the NLG arrived at the courthouse, calmed Plaintiff down, and let her use their cell phone so she could call her husband. They then were able to direct Plaintiff to the location where she had parked her car.

56. It took Plaintiff approximately 3 ½ hours to get to her hotel, which was only 35 minutes away from NYC. Plaintiff was forced to stop many times to get directions, as she had no map and no GPS service (everything had been confiscated by the police); psychologically she was completely disoriented.

57. The next day Plaintiff attempted to retrieve her property. Since it had all been labeled "arrest evidence", the police refused to give it back to her. Consequently Plaintiff was forced to leave NYC without her property. A separate trip to NYC was required in order for Plaintiff to finally get back her property, some of which had been damaged during the confiscation process.

58. Even though Plaintiff specifically told the officers that they did not have her permission to take her property, they took everything and labeled most of it as arrest evidence even though none of it was arrest evidence. When Plaintiff returned home she was forced to purchase a new computer, cell phone, amplified speaker, and microphone so that she could function with her various activities and obligations.

59. Plaintiff's criminal case was dismissed on April 29, 2014.

60. Plaintiff has been under the care of counselors and doctors ever since this incident occurred for the physical and psychological damages that have been done to her.

61. The city of New York and the NYPD maintains a policy or custom that permits amplified sound from those that they choose to give said right. In NYC the right to talk with mild amplification will cost an individual at least $45, but only if the police wish to grant a permit to the applicant. This policy is highly discriminatory and is unconstitutional.

62. Plaintiff was once again discriminated against on September 17, 2014 when the police refused to give her an amplification permit even though she made application for said permit 1 month in advance. This was for the Occupy 3 year anniversary gathering.

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

63. The NYPD acted as agents of the state as they discriminated against Plaintiff and suppressed her right to free speech expression.

64. The Plaintiff's arrest on September 17, 2013 in front of all of the people at Zuccotti Park was humiliating and embarrassing and stress and anxiety inducing.

65. The Plaintiff's arrest and the pendency of the criminal court proceeding, until it was dismissed, were stress and anxiety inducing, emotionally distressful, and otherwise publicly humiliating and embarrassing.

66. Defendants "Doe 1 and Doe 2", BYRNES and COX were involved in the pre-planning and/or the execution of Plaintiff's arrest.

67. It is believed that, among the Defendants, all or some had had specialized training in how to deal with individuals involved in the Occupy movement.

68. It is believed that the Defendants lacked an objectively reasonable probable cause fact basis on which to believe that the Plaintiff was engaged in any criminal conduct on September 17, 2013 to justify Plaintiffs custodial arrest.

69. The Plaintiff committed no criminal offense or other offense whatsoever and no reasonable police officer could have reasonably and objectively believed that the Plaintiff committed any criminal offense or any other offense under the law to justify even a stop, let alone a custodial arrest, incarceration and detention.

70. There was no basis for the stop and custodial arrest of the Plaintiff by the New York City Police Officers, each of whom is an agent and employee of the City of New York.

71. Plaintiff had no information or idea whatsoever as to the basis for her arrest. Throughout her entire time with Officer BYRNES, the comment she heard over and over again from the officers were "she's with Occupy."

72. There was no justification to handcuff the Plaintiff, or to detain the Plaintiff in custody for the period of time she was held in custody until she appeared before the court. At that time she was released without bail and required to return to court on October 30, 2013. The charges against Plaintiff were eventually dismissed and the records sealed.

73. The Defendants, per the policy of the City of New York, silenced and intimidated another Occupier trying to "wake up the sleeping giant".

74. While the actions and conduct of the New York City Police Officers were unlawful, they were taken in the course of their duties and functions and incidental to the otherwise

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

lawful performance of those duties and functions as New York Police Officers and as agents and employees of the city of New York.

75. Plaintiff's custodial arrest was unlawful and thereby violated heer rights protected by the Fourth Amendment to the Constitution of the United States.

76. Plaintiff was subjected to a Fourth Amendment offensive stop, false arrest and unlawful custodial detention and imprisonment, and she was subjected to excessive, unreasonable and unnecessary force in the form of her hand cuffing, being pulled about backwards by the handcuffs, thrown against a wall, and being left helpless and alone, saturated in urine, after appearing before the judge.

77. The actions, conduct, policies and practices and customs here and described violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, and 42 U.S.C. 1983.

78. The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma, PTSD (a permanent brain injury), and physical pain and suffering.

79. The Plaintiff suffered public humiliation and embarrassment.

80. The Plaintiff has not yet placed a monetary value on the damages which she incurred although she believes them to be substantial and to include compensatory and punitive damages.

81. The Plaintiff has no other adequate remedy of law other than for the institution of this litigation.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### False Imprisonment
Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States
42 U.S.C. § 1983

82. Plaintiff reiterates paragraphs 1-81 above and incorporates such by reference herein.

83. The seizure, detention, arrest, and imprisonment of Plaintiff by Defendants were made without any warrant or other legal process directing or authorizing her seizure, detention, arrest, or imprisonment.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

84. The seizure, detention, arrest, and imprisonment of Plaintiff were made without probable cause to believe that she had committed a crime or offense.

85. The charge upon which Defendants arrested Plaintiff were false.

86. Plaintiff was aware of her seizure, detention, arrest and imprisonment by Defendants.

87. Plaintiff did not consent to her seizure, detention, arrest or imprisonment.

88. As a result of the foregoing, Plaintiff was deprived of her liberty, was imprisoned, was greatly embarrassed and humiliated, and was subjected to mental and physical distress.

89. The seizure, detention, arrest and imprisonment of Plaintiff deprived her of her right to be free from unreasonable searches and seizures and her right not to be deprived of her liberty without due process of law guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

90. Defendants were acting under color of state law when they seized, detained, arrested and imprisoned Plaintiff.

91. Defendants deprived Plaintiff of her right to be free from unreasonable searches and seizures, and not to be deprived of her liberty without due process of law guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States under color of state law, in violation of 42 U.S.C. 1983, by seizing, detaining, arresting and imprisoning Plaintiff on a false criminal charge.

## SECOND CAUSE OF ACTION
### Unreasonable Seizure
Fourth Amendment to the U.S. Constitution
42 U.S.C. 1983

92. Plaintiff reiterates paragraphs 1-91 above and incorporates such by reference herein.

93. Defendants detained Plaintiff , against her will, in various locations: a police paddy wagon, a jail cell, Bellevue Hospital, a police car, and the courthouse.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

94. Plaintiff was not allowed to be free for almost 24 hours.  The transportation of Plaintiff, against her will, to the various locations deprived her of her right to be free from unreasonable seizures guaranteed by the Fourth Amendment of the Constitution of the United States.

95. Defendants were acting under color of state law when they seized not only Plaintiff, but also her property, which she had specifically given to some friends and told the Defendants that she did not give them permission to take any of her property.

96. Plaintiff's property was not only seized by Defendants, but searched without her permission and in the process damage occurred.

97. Defendants actions deprived Plaintiff of her right to be secure in her person and to be free from unreasonable seizures guaranteed by the Fourth Amendment of the Constitution of the United States under color of state law and in violation of 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION
**Excessive Use of Force**
Fourth and Fourteenth Amendment to the Constitution of the United States
42 U.S.C. § 1983

98. Plaintiff reiterates paragraphs 1-97 above and incorporates such by reference herein.

99. Plaintiff was subjected to excessive force when Defendants tightly handcuffed her on her very arthritic wrists with her hands behind her back.  Plaintiff pleaded for the cuffs to be loosened and nothing was done until they got to the precinct.  Defendant BYRNES threw Plaintiff up against a wall and then drug her backwards by the handcuffs through the courthouse hallway and through a court in session.  Plaintiff was screaming in agony and crying uncontrollably.  Said action was so severe that Plaintiff was not able to think clearly when she was finally released.  To date she suffers immensely from Post Traumatic Stress Disorder ("PTSD").  All of this was done in violation of her rights as guaranteed under the Fourth and Fourteenth amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

100.     The Plaintiff suffered injuries and damages.

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

## FOURTH CAUSE OF ACTION
### Unconstitutional Policies, Practices, and Customs (Monell Claim)
### 42 U.S.C. § 1983

101.     Plaintiff reiterates paragraphs 1-100 above and incorporates such by reference herein.

102.     The policies, practices, and customs herein described, including discrimination against peaceful political activists, propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

103.     The acts complained of were carried out by the individual Defendants in their capacities as Police Officers and employees of Defendant the City of New York, with all the actual and/or apparent authority attendant thereto.

104.     The acts complained of were carried out by the individual Defendants in their capacities as Police Officers pursuant to the customs, policies, usages, practices, procedures, and wools of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

105.     Defendant the City of New York implemented, enforced, encouraged, and sanctioned a policy, practice and/or custom of arresting persons on insufficient evidence in violation of the Fourth, Fifth and Fourteenth  Amendments of the Constitution of the United States.

106.     The aforesaid customs, policies, usages, practices, procedures, and rules of Defendant the city of New York include, but are not limited to, the following:

      a.) Defendant The City of New York failed to properly train police officers in the standards for probable cause for the warrantless seizure and arrest of individuals consistent with the requirements of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States;

      b.) Defendant The City of New York failed to properly train police officers in the circumstances under which probable cause exists for the warrantless arrest of an individual;

      c.) Defendant The City of New York failed to discipline police officers for making warrantless arrests where probable cause for an arrest did not exist;

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

d.) Defendant The City of New York failed to properly supervise police officers during the performance of their duties, and more particularly during warrantless arrests and during the processing of arresting individuals;

e.) Defendant The City of New York failed to properly monitor arrests made by its police officers to determine if its police officers were following proper standards for probable cause for the warrantless seizure and arrest of individuals consistent with the requirements of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

107.    The arrest, imprisonment, and prosecution of Plaintiff on a false criminal charge resulted from the failure of Defendant The City of New York to properly train, supervise, monitor and discipline its police officers in the standards of probable cause and the requirements for warrantless arrests.

108.    Defendant The City of New York was acting under color of state law when it formulated and implemented a policy, practice or custom of arresting persons on insufficient evidence.

109.    Defendant The City of New York deprived Plaintiff of her rights to be free of unreasonable searches and seizures, to be secure in her person, and not to be deprived of her liberty without due process of law guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States under color of state law, in violation of 42 U.S.C. § 1983, by adopting and enforcing a policy, practice or custom of failing to properly train its police officers in the requirements for warrantless arrests and the standards of probable cause for warrantless arrests.

110.    Plaintiff suffered injuries and damages.

### FOURTH CAUSE OF ACTION
### Negligence – Failure to Train and Supervise
The Doctrine of Respondeat Superior

111.    Plaintiff reiterates paragraphs 1-110 above and incorporates such by reference herein.

112.    If the City of New York elects to represent its officers as it does in the overwhelming number of cases brought against its officers (it is believed that the City of New York elects to represent its officers in approximately 99% of the cases brought against its officers in the federal courts for alleged police officer misconduct), the City of New York uniformly and as a matter of policy and practices and custom pays the

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

judgments awarded against its representative officers (both compensatory and punitive damages) and otherwise pays settlements, *all without requiring contribution from the officers.*

113.     The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York Police Officers and, in their capacities as such, as agents and employees of the City of New York.

114.     Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken in connection with the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

115.     Plaintiff is entitled to recover directly against the City of New York for the conduct of its named and unnamed Officers under the federal claim jurisdiction and/or against the City pursuant to the doctrine of respondeat superior as the City is, as a matter of fact and law and policy and practice and custom, the real party in interest in this litigation.

116.     Plaintiff suffered injuries and damages.

## CAUSE OF ACTION FIVE
### Negligence - Failure to Investigate
Municipal Liability Under 42 U.S.C. § 1983

117.     Plaintiff reiterates paragraphs 1-116 above and incorporates such by reference herein.

118.     Upon information and belief, at all times relevant herein, Defendant The City of New York was aware from notices of claim, lawsuits, claims filed with the New York City Police Department and the Civilian Complaint Review Board, and from the New York Police Department's own observations, that Defendants are unfit, ill tempered police officers that have the propensity to commit the acts alleged here in.

119.     Upon information and belief, Defendant The City of New York failed to adequately investigate prior complaints against these officers.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

120.     Upon information and belief, The City of New York failed to take remedial action to train, retrain, supervise, monitor and discipline police officers for violations of Constitutional rights.

121.     The failure of Defendant The City of New York to properly take remedial action to train, retrain, supervise, monitor and discipline police officers for violations of Constitutional rights constituted deliberate indifference to the rights of persons with whom its police officers come into contact.

122.     Defendant the City of New York implemented, enforced, encouraged, sanctioned to and failed to rectify such policy, practice and/or custom with deliberate indifference to and disregard for the civil rights of individuals, and more particularly, the civil rights of Plaintiff.

123.     Defendant the City of New York was acting under color of state law when it formulated and implemented a policy, custom or practice of failing adequately to investigate complaints against police officers for violating civil rights and to take appropriate remedial action.

124.     Defendant The City of New York deprived Plaintiff of her rights to be secure or in her person, to be free of unreasonable searches and seizures and not to be deprived of her liberty without due process of law guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States under color of state law, in violation of 42 U.S.C. § 1983, by adopting an enforcing a policy, practice or custom of failing adequately to investigate complaints against police officers and to take appropriate remedial action to prevent further violations of the civil rights of members of the public.

125.     Plaintiff suffered injuries and damages.

**CAUSE OF ACTION SIX**
**Violation of Freedom of Speech**
**Conspiracy to Prevent Freedom of Speech**
**Failure to Prevent Conspiracy Against Freedom of Speech**
First Amendment to the Constitution of the United States
42 U.S.C. § 1983, 1985, and 1986

126.     Plaintiff reiterates paragraphs 1-125 above and incorporates such by reference herein.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

127.    BYRNES, COX, DOE1, DOE 2, and other DOE Defendants conspired to do an unlawful custodial arrest of Plaintiff for the purpose of silencing her voice and depriving her of liberty and property.   Said actions were unlawfully politically driven.   The actions of Defendants, as described in this Complaint, were done in furtherance of the conspiracy and caused injury to both Plaintiff and her property which were unlawfully seized and retained.  Said actions were violations of the Fourth Amendment to the Constitution of the United States.

128.    Plaintiff was exercising her constitutionally protected right to freedom of speech, protected by the First Amendment of the Constitution of the United States.

129.    The permitting process for amplified sound in NYC allows for groups to be discriminated against at the discretion of the government; this is unconstitutional and violates the Fifth and Fourteenth Amendments to the Constitution of the United States.

130.    The amplified sound permit limits the movement of the individual desiring to speak to the public.  On its face and as applied or threatened to be applied, it is an unconstitutionally overbroad restriction on expressive activity.  This violates the Fifth and Fourteenth Amendments to the Constitution of the United States.

131.    The permitting process can be used as a content-based and viewpoint-based restriction on speech.

132.    The permitting process, on its face and as applied or threatened to be applied, does not serve a significant governmental interest.

133.    The permitting process, on its face and as applied or threatened to be applied, is neither narrowly tailored nor the least restrictive means to accomplish any permissible governmental purpose sought to be served by the legislation.

134.    The permitting process is an irrational and unreasonable statute, imposing unjustifiable restrictions on the exercise of protected constitutional rights.   Because the process is irrational and unreasonable, its application violates the due process guarantee of the Fourteenth Amendment to the Constitution of the United States.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

135.     Plaintiff had no objections from the public regarding her amplified sound; it was not excessively loud.

136.     Plaintiff's topics that she discussed were of grave public concern and needed to be disseminated in whatever manner was possible.

137.     The level of noise created by Plaintiff's amplification, measured in decibels, was less than whistles and drums that were being played in the area.  Not once did an officer gauge the level of Plaintiff's amplification with a decibel meter.  The issue at hand was not a matter of noise control, as Plaintiff has personally witnessed street performers in NYC that were much louder than she was.  Plaintiff was being banished due to who she was associating with (Occupiers) and what she was talking about (9-11 truths).

138.     Upon information and belief, Defendants were ordered to silence Plaintiff not because of the level of noise being produced, but because she was an "Occupier" and because she was sharing some of the truths about the tragedy of what happened in New York City on September 11, 2001 when the World Trade Center Towers fell with an alleged terrorist attack.

139.     Not only did the NYPD Defendants interfere with Plaintiff's ability to speak to the public, but upon information and belief there was a governmental conspiracy to silence her and to add her name to a watch list.  These were all violations of Plaintiff's rights protected by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

## CAUSE OF ACTION SEVEN
### Abuse of Process

140.     Plaintiff reiterates paragraphs 1-138 above and incorporates such by reference herein.

141.     Defendants, in arresting Plaintiff, were acting in their capacity as an agent, servant and employee of Defendants NYC and the NYPD and were motivated by an ulterior purpose to do harm, without justification or economic or social excuse.

142.     Defendants, in arresting Plaintiff, were acting in their capacity as an agent, servant, and employee of Defendants NYC and NYPD and sought either a detriment to

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

Plaintiff or a collateral advantage to the Defendant that is outside of the legitimate ends of making an arrest.

143.    Defendants misused the legal process and orchestrated a long and torturous arrest on Plaintiff in an attempt to silence her permanently. Defendants acted with malice and conscious disregard for the rights of Plaintiff in that their ulterior purpose in misusing the legal process was to intimidate Plaintiff so that she would stop being an activist; it was indeed politically driven.

144.    As a proximate result of Defendants' misuse of the legal process, Plaintiff sustained multiple injuries, including loss of liberty, emotional distress and humiliation, loss of enjoyment of life and fear and intimidation for her safety.

## CAUSE OF ACTION EIGHT
### Intentional Infliction of Emotional Distress
Fourth and Fourteenth Amendment to the Constitution of the United States

145.    Plaintiff reiterates paragraphs 1-144 above and incorporates such by reference herein.

146.    The actions of the officers, BYRNES in particular, were done intentionally to "mentally break" Plaintiff, which would make her unable to continue in her activism efforts. Not only did said actions affect Plaintiff personally, but she was being used as an example or warning to other activists that, if they wanted to continue fighting the corruption, the same thing would happen to them.

147.    Defendant BYRNES conduct was outrageous to be so brutal to an elderly, physically handicapped person.

148.    In a separate incident, Detective LEE had indicated to Plaintiff that she would be receiving her amplified sound permit on September 17, 2014. Plaintiff traveled to NYC and LEE refused to give Plaintiff the permit, which was done to intentionally harass Plaintiff and inflict additional emotional distress on her.

149.    Plaintiff was severely injured, as her PTSD was exasperated by the outrageous conduct of BYRNES and LEE.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

**WHEREFORE** and in the light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

a.  Invoke pendent party and pendent claim jurisdication.

b.  Award appropriate compensatory and punitive damages.

c.  Award appropriate declaratory and injunctive relief.

d.  Empanel a jury.

f.  Award attorney's fees, if applicable, and costs.

g.  Award such other and further relief as the Court deems to be in the interest of justice.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all questions of fact raised by her Complaint.

Respectfully submitted,

Nadine Hays
In Pro Se
Dated:  December 10, 2014

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

12/5/2014

1

## VERIFICATION

2

**STATE OF CALIFORNIA**
**COUNTY OF VENTURA**

3

4  NADINE HAYS, being duly sworn, deposes and states that she is the Plaintiff in the within
action; that she has read the foregoing Complaint and knows the contents thereof; that the same
5  is true to her own knowledge, except as to matters therein stated to be alleged upon information
and belief; and that as to those matters she believes them to be true.

6

7

8  _Nadine Hays_
Nadine Hays

9

10

_Sworn to before me, this 10th day of December, 2014._

11

12

13  _William T. Adams_          State of California, County of _VENTURA_
Notary Public                Subscribed and sworn to (or affirmed) before me

14                                on this _10_ day of _DECEMBER_, 20 _14_,

15                                by _NADINE HAYS_,
          WILLIAM T. ADAMS         proved to me on the basis of satisfactory evidence
16          COMM. #1943213          to be the person(s) who appeared before me.
       NOTARY PUBLIC • CALIFORNIA
           VENTURA COUNTY         Signature: _William T. Adams_
17        Comm. Exp. JULY 30, 2015

18

19

20

21

22

23

24

25

26

27  **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; NEGLIGENCE**

28                               12/5/2014