14 CV 10126 (JMF)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADINE HAYS,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK, OFFICER DENNIS
BYRNES ("BYRNES"), OFFICER KINO COX
("COX"), CAPTAIN MARK IOCCO ("IOCCO"),
JAMES CONROY ("CONROY"), DETECTIVE RICK
LEE      (LEE"),      MICHAEL      BLOOMBERG
("BLOOMBERG"), RAYMOND KELLY ("KELLY"),
DOES 1-10

                                        Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' SECOND MOTION TO DISMISS

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*
*Of Counsel Joy T. Anakhu*
*Tel:  (212) 356-2323*
*Matter No. 2015-039707*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ II

TABLE OF AUTHORITIES ...................................................................................... IV

PRELIMINARY STATEMENT ................................................................................. IV

ARGUMENT ............................................................................................................... 2

DISMISSAL OF PLAINTIFF'S FALSE
ARREST/IMPRISONMENT CLAIM IS
WARRANTED ............................................................................................. 2

ANY SEIZURE OF PLAINTIFF'S PERSONS OR
PROPERTY WAS LAWFUL....................................................................... 5

PLAINTIFF FAILS TO STATE A CLAIM FOR
EXCESSIVE FORCE ................................................................................... 6

PLAINTIFF'S CLAIM FOR ASSAULT AND
BATTERY, AS WELL AS
NEGLIGENT/INTENTIAL INFLICTION OF
EMOTIONAL DISTRESS ("NIED", "IIED")
MUST BE DISMISSED ................................................................................ 9

ANY CLAIMS PREDICATED ON EITHER THE
FIRST AMENDMENT OR A CONSPIRACY
THEORY MUST BE DISMISSED ............................................................ 10

PLAINTIFF'S ABUSE OF PROCESS AND
CONDITIONS OF CONFINEMENT CLAIMS
MUST BE DISMISSED .............................................................................. 11

PLAINTIFF'S MANDATORY DUTY
ARGUMENTS FAIL................................................................................... 13

PLAINTIFF HAS WITHDRAWN HER FALSE
LIGHT AND DEFAMATION OF CHARACTER
CLAIMS. ADDITIONALLY ANY PRIVACY
CLAIM LACKS MERIT AND SHOULD ALSO
BE DISMISSED .......................................................................................... 15

PLAINTIFF'S MONELL THEORIES MUST BE
DISMISSED ................................................................................................ 16

PLAINTIFF HAS FAILED TO ADDRESS THE
QUESTION OF PERSONAL INVOLVEMENT
FOR SEVERAL DEFENDANTS.............................................................. 18

**CONCLUSION** ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004)................................. 18

Ashcroft v. Iqbal, 556 U.S. 662 (2009)................................................................... 11, 17

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007)....................................... 1, 14

Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 359 (S.D.N.Y. 2009) ...................................... 6

Blackshear v. Coughlin, 1996 U.S. Dist. LEXIS 22081 (N.D.N.Y. 1996) ................................. 14

Boley v. Durets, 2013 U.S. Dist. LEXIS 177862 (E.D.N.Y. Dec. 10, 2013) ................................ 8

Butler v Castro, 896 F.2d 698, 700 (2d Cir. 1990) ........................................................ 6

Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. 2016) .................. 4, 13

Carpenter v. City of New York, 984 F. Supp. 2d 255 (S.D.N.Y. 2013)....................................... 17

Cipriani v. Buffardi, 2007 U.S. Dist. LEXIS 11727, 2007 WL 607341(N.D.N.Y. 2007) .......... 18

City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) ............................................ 17

Danielak v. City of New York, 2005 U.S. Dist. LEXIS 40901 (E.D.N.Y. 2005)…………………11

Dockery v. Tucker, 2008 US Dist. LEXIS 49426 (E. D.N.Y 2008)............................................. 6

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ............................................................ 5

Farmer v. Brennan,  511 U.S. 825, 837 (1994).............................................................. 8

Ford Motor Credit Co. v. N.Y.C. Police Dept., 503 F.3d 186, 188 (2d Cir. 2007) ........................ 5

Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014) ................................................................ 3, 16

Giaccio v. City of New York, 502 F. Supp. 2d 380, 389 (S.D.N.Y. 2007). ................................ 17

Harrington v. Cnty. of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010)........................................... 12

Harrington v. Mid-State Corr. Facility, 2010 U.S. Dist. Lexis 99058, (N.D.N.Y. 2010) ............. 3

Hayes v. Perotta, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010) ........................................ 17

Hernandez v. City of Rochester, 212 F. Supp. 2d 143, 151 (W.D.N.Y. 2002) ............................ 6

Jabbar v. Fischer, 683 F.3d 54, 58 (2d Cir. 2012) ...................................................... 19

Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007)....................................... 18

Johnson v. Cnty. of Nassau, 2010 U.S. Dist. LEXIS 101752 (E.D.N.Y. 2010)............................ 9

Joyner v. Greiner, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002)........................................ 8

Lebowitz v. City of New York,  606 Fed. App'x. 17 (2d Cir. 2015) ........................................ 12

Lebowitz v. City of New York,  606 Fed. App'x. 17, 18 (2d Cir. 2015) .................................... 13

Marcavage v. City of New York, 918 F. Supp. 2d 266 (SDNY 2013)......................................... 11

Maryland v. King, 133 S. Ct. 1958, 1975 (2013) ........................................................ 12

McMillan v. City of New York, 2009 U.S. Dist. LEXIS 7956 (E.D.N.Y. 2009)........................ 10

Mittelman v. County of Rockland, 2013 U.S. Dist. LEXIS 46382 (S.D.N.Y. 2013)..................... 7

Mozzochi v. Borden, 959 F.2d 1174, 1179 (2d Cir. 1992)............................................. 2

Murphy v. American Home Prods. Corp., 58 N.Y.2d 293 (1983) ................................. 10

Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983) ....................................... 10

People v. Nunez, 36 Misc.3d 172 (N.Y. City Crim. Ct. 2012)...................................... 16

Pesola/Allen v. City of New York, 2016 U.S. Dist. LEXIS 42977 (S.D.N.Y. 2016) .................. 17

Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 441 (N.D.N.Y. 1998)................................. 15

Rasmussen v. City of New York, 766 F. Supp. 2d 399 (E.D.N.Y. 2011) .................................... 16

Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. 2005) .............................. 7

Russo v. Port Auth., 2008 U.S. Dist. LEXIS 79032, 2008 WL 4508558 (E.D.N.Y. 2008)........... 9

Sabin v. Camp, 2013 U.S. Dist. LEXIS 28689, 13-14 (N.D.N.Y 2013) ...................................... 4

Simms v. City of New York, 480 Fed. Appx. 627, 630 (2d Cir. 2012)........................................ 16

Smith v. O'Conner, 901 F.Supp. 644, 647 (S.D.N.Y. 1995)................................................ 6

Stoianoff v. Comm'r of Motor Vehicles, 107 F. Supp. 2d 439, 442 (S.D.N.Y. 2000)................. 15

Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. 2013) .................... 16

United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993) ......... 10

United States v. Smith, 340 F. Supp. 1023, 1027 (D. Conn. 1972)................................................. 5

Universal Calvary Church v. City of New York, 2000 U.S. Dist. LEXIS 17037

    (S.D.N.Y. Nov. 2000) ......................................................................................................... 10

**Statutes**

38 R.C.N.Y §8-02(a)........................................................................................................................ 4

42 U.S.C. § 12102(1) ...................................................................................................................... 4

N.Y. Crim. Proc. Law § 140.10(1)(a) ...................................................................................... 4, 13

N.Y. CPL §140.20 ......................................................................................................................... 14

N.Y.C. Admin. Code §10-108 .................................................................................................. 2, 13

## PRELIMINARY STATEMENT

Defendants, by their attorney Zachary W. Carter, Corporation Counsel of the City of New York, hereby submit this Reply Memorandum of Law in support of their motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In opposition to defendants' motion, plaintiff complains that discovery has not commenced in this action and therefore any motion for dismissal is premature.  See Pl Opp. 3:6-11.  This is an inaccurate understanding of the pleading requirements as set forth in an Iqbal and Twombly world.  As noted by the Supreme Court "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).

The Court has stressed that meritless claims, such as the ones presented here, must be dismissed at the earliest stage possible before the parties undergo the expense associated with discovery.  Defendants submit that Plaintiff's complaint fails to state a claim which would entitle her to discovery and note that her opposition fails to controvert several arguments set forth in Defendants' July 22, 2016 motion.  This includes, but is not limited to Plaintiff's failure to effectively rebut the argument that many defendants named in this action had no personal involvement in any alleged constitutional.  Lastly, Plaintiff fails to state a claim under any U.S. constitutional or state theory, including for municipal liability.  Accordingly, Defendants' motion should be granted in its entirety, and Plaintiff's Complaint must be dismissed with prejudice.

## <u>ARGUMENT</u>

### <u>DISMISSAL OF PLAINTIFF'S FALSE ARREST/IMPRISONMENT CLAIM IS WARRANTED</u>

It is undisputed that on September 17, 2013, Plaintiff used a sound amplification device on the corner of Liberty and Broadway near Zuccotti Park.  It is further undisputed that she did not have the required permit to use such an instrumentality (<u>See</u> Pl's Opp. 13:9-11) and was therefore in violation of NYC Admin. Code §10-108. Likewise, the incontrovertible videos show that Plaintiff impaired the officers' ability to enforce NYC Admin Code §10-108 which made her susceptible to arrest under N.Y. Penal Law §195.05, the Obstruction of Governmental Administration. Despite these undisputed facts and evidence, Plaintiff asserts in her opposition brief various subjective reasons why officers lacked probable cause to arrest her.  These reasons are unavailing and can be disposed of quickly.[1]

First, as this Court is aware, the subjective motives of either the arrestee or the officers are irrelevant to the probable cause analysis which turns instead on the facts and circumstances known to the officer.  <u>See</u> <u>Mozzochi v. Borden</u>, 959 F.2d 1174, 1179 (2d Cir. 1992).  Plaintiff's argument that she ignored repeated orders by officers to cease use of the sound amplification device because: i) she was unaware of New York City Laws; ii) she feared losing her voice if she talked for a long period of time; iii) she had a captive audience that was interested in what she had to say; and iv) no one asked her to turn down the volume.  These are all subjective reasons plaintiff has put forward and officers are not required to delve into plaintiff's thought process when there is probable cause to arrest.

---

[1] Plaintiff appears to concede that the officers had at least some authority to enforce the New York City sound amplification statute. <u>See</u> Pl's Opp. pgs. 20:22-21:1. Plaintiff's argument instead is that officers "were only authorized by law to cite and release" her.  <u>Id.</u>  Based on this statement plaintiff essentially accepts that officers had probable cause.

Furthermore, nowhere in the record does it suggest that plaintiff communicated any of her thoughts to officers. Even if she had, the officers would still be entitled to qualified immunity as 1) reasonable officers could disagree as to whether this dissipated probable cause; and 2) the statue concerning amplified sound does not note any of the above as defenses or exceptions. Qualified immunity would be available to these officers as it was not clearly established that her arrest was improper at the time of plaintiff's arrest.  See Garcia v. Doe, 779 F.3d 84, 93 (2d Cir. 2014).

Plaintiff's next argument that it was "medically necessary" for her to use a sound amplification device does not defeating probable cause.  As noted above, nowhere in the record are there facts or evidence to suggest that plaintiff informed officers of any medical condition that required her to use a sound amplification device in violation of the statute.  Further, any suggestion from a health professional that Plaintiff be allowed to use a device comes two months after her interaction with officers on September 17, 2013.  See ECF No. 34-7, Exhibit 5 (Generic letter from Ernest Anthony Pillado, MD dated November 13, 2013, noting that Plaintiff was having difficulty speaking and recommending that she be allowed to use an amplifier). Even still, the post incident medical note from Dr. Pillado makes clear that "the recommendation is not meant to *violate any local, state or federal laws*."  Id. (emphasis added).  Here, the statute at issue does not provide for medical exceptions.  Therefore, given Plaintiff's failure to inform officers of her "medical" condition and the fact that her condition would not have served as an exception to the statute, officers had probable cause or would at least be entitled to qualified immunity.[2]

---

[2] Plaintiff also mentions in passing that her rights under the Americans with Disabilities Act were violated because she was ordered to stop using the sound amplification device and it was ultimately confiscated as arrest evidence. Any such claim must be dismissed as she cannot

Plaintiff's citation to 38 R.C.N.Y §8-02(a) is misplaced.  This section of the statute outlines the application process for sound permits.  The five day rule exception that is noted in the statute does not absolve an individual from having to submit an application.  The statue merely notes  that the five days in advance rule for submitting an application can be shorten to fewer days in "a case of a sudden event of great public interest where applicant was unable, through no fault of his or her own, to file the application within the required time."  See 38 R.C.N.Y §8-02(a).  Here, Plaintiff concedes that she made no attempt to apply for a sound amplification device before her arrest on September 17, 2013.  Moreover, Plaintiff has made no showing that she was unable to obtain a permit, through no fault of her own, prior to that date.  Lastly, Plaintiff cannot plausibly argue that the catastrophic events on September 11, 2001, were a "sudden event" which prevented her from making the timeframe outlined within the statue, particularly when it occurred over twelve years prior to her arrest.

Finally, Plaintiff's argument that she should have been issued a summons/citation rather than arrested is without merit and does not negate a finding that her arrest was proper.  N.Y. Crim. Proc. Law § 140.10(1)(a) authorizes a police officer to arrest an individual without a warrant "for . . . any offense when [s]he has reasonable cause to believe that such person has committed such offense in h[er] presence."  Id. See also Caravalho v. City of New York, 2016

---

maintain an ADA claim against the individual defendants.  See Harrington v. Mid-State Corr. Facility, 2010 U.S. Dist. Lexis 99058, *26 (N.D.N.Y. May 21, 2010).  Additionally, Plaintiff has failed to plead all of the elements required for an ADA claim including facts that would suggest that she was disabled on the date in question or that her disability "limits one or more major life activities."  See Sabin v. Camp, 2013 U.S. Dist. LEXIS 28689, 13-14 (N.D.N.Y Feb. 5, 2013) (quoting 42 U.S.C. § 12102(1)).  Plaintiff has also failed to allege facts that officers were aware of her disability and made no accommodations; that she was excluded from participation in a public entity's services, programs, activities; or was otherwise discriminated against.  As noted in the record, Plaintiff was ordered to stop using the sound amplification device because she was violating the law and her subsequent refusal led to her arrest and resulted in her equipment being seized as arrest evidence.  Based on the foregoing any ADA claim should be dismissed.

U.S. Dist. LEXIS 44280, at *43 (S.D.N.Y. Mar. 31, 2016) (noting that the fact that plaintiffs were arrested rather than given summonses does not, in and of itself, create a constitutional violation).  Based on the foregoing and as outlined in Defendants' moving papers, Plaintiff's claim for false arrest/imprisonment must be dismissed.

## ANY SEIZURE OF PLAINTIFF'S PERSONS OR PROPERTY WAS LAWFUL

As Defendants have noted in their moving papers, the seizure of property as arrest evidence is a lawful use of policing powers.  See Ford Motor Credit Co. v. N.Y.C. Police Dept., 503 F.3d 186, 188 (2d Cir. 2007).  Similarly, an arrest/seizure of an individual that is premised on probable cause is also permissible.  See Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).  Plaintiff essentially concedes these assertions.  See Pl's Opp. 14:14.  Therefore, Plaintiff's only arguments on theses point are that 1) her arrest was unlawful; 2) the seizure of her laptop caused her inconvenience as she could not "conduct business;" and 3) she was not compensated for the time and money used to retrieve her property.

As noted *supra*, Plaintiff's arrest was premised on probable cause, therefore her arrest/seizure was lawful.  Similarly, the seizure of her property for purposes of safe keeping and/or arrest evidence was also lawful as they were either within her possession at the time of her arrest or the instrumentality used to commit the offense in which she was arrested for.  See United States v. Smith, 340 F. Supp. 1023, 1027 (D. Conn. 1972) (Court finding that it was "entirely reasonable for the police to remove from the defendant his personal effects for safekeeping before placing him in a cell.")  Plaintiff concedes she received a property voucher and does not sufficiently refute Defendants' initial arguments that her property was returned. While Plaintiff now alleges in conclusory fashion that some of her property was either "damaged or missing," this does not give rise to a constitutional violation.  The Second Circuit has

explained that post-deprivation remedies are adequate for alleged due process violations where the deprivation of property itself is the result of "random and unauthorized" acts of a state actor. Butler v Castro, 896 F.2d 698, 700 (2d Cir. 1990).  A § 1983 action is only appropriate where the deprivation is caused by "the operation of established state procedures."  Id.

"This rule relies on the rationale that when deprivation of property is effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply impractical since the state cannot know when such deprivation will occur."  Hernandez v. City of Rochester, 212 F. Supp. 2d 143, 151 (W.D.N.Y. 2002).  Here, Plaintiff admits that any damage that occurred to her property was repaired.  See Pl's Amended Complaint ("Am. Compl."), ¶82, attached as Exhibit B, to the Declaration of Joy Anakhu, ECF No. 44.  Even if the property were not repaired or were missing, this act of damaging or losing property could only be seen as the "random and unauthorized conduct of a state employee."  Hernandez at *151. Therefore, Plaintiff would have to avail herself to post-deprivation state remedies.  Id.  Plaintiff's failure to take advantage of these remedies "does not convert h[er] cause of action into a constitutional due process claim."  Smith v. O'Conner, 901 F. Supp. 644, 647 (S.D.N.Y. 1995). Based on the foregoing, plaintiff's seizure claims must be dismissed.[3]

## PLAINTIFF FAILS TO STATE A CLAIM FOR EXCESSIVE FORCE

Plaintiff's claim for excessive force must be dismissed as she has failed to allege that any force used against her was "sufficiently serious or harmful enough to be actionable."

---

[3] Similarly plaintiff's trespass to chattel's claim must be dismissed as the seizure of her property was justified. See Dockery v. Tucker, 2008 US Dist. LEXIS 49426 * 35 (E. D.N.Y 2008). Additionally, Plaintiff has failed to allege facts that would suggest any "medically necessary" equipment were harmed. See Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 359 (S.D.N.Y. 2009).  This includes but is not limited to allegations regarding the "condition, quality or material value" of her cell phone, hand truck or cart.  Id.; see also, Am. Compl., Exhibit 19.

Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335, at *11 (S.D.N.Y. Mar. 21, 2005).

Plaintiff argues that the handcuffs applied to her wrists hurt her; she was forced to walk backwards in handcuffs; and was lifted into a police van with the assistance of the handcuffs. See Pl's Opp. 17:3-7. Plaintiff does not deny, nor can she, that she did not initially ask officers to remove, reapply or loosen her handcuffs. Further, Plaintiff concedes that when she finally complained about the handcuffs, they were in fact removed. See Am. Compl. ¶127. Finally, Plaintiff has failed to identify any physical injury that resulted from the temporary use of the handcuffs. Plaintiff's assertion, for the first time, that she had an artificial knee replacement or other pre-existing medical condition will not keep an excessive force claim alive. See Mittelman v. County of Rockland, 2013 U.S. Dist. LEXIS 46382 at 35-37 (S.D.N.Y. Mar. 26, 2013) (dismissing a "tight handcuffs" excessive force claim where plaintiff failed to plead a specific or identifiable injury allegedly sustained as a result of being handcuffed apart from his conclusory allegations that the handcuffing caused him "great pain" because of a pre-existing medical condition). Alternatively, this argument only strengths Defendants' entitlement to qualified immunity as it was not clearly established that their actions (i.e. having Plaintiff walk backwards, etc.) were unlawful. Therefore, any claim predicated on the use of handcuffs should be dismissed.[4]

Plaintiff next argues in conclusory fashion that she was "mentally tortured" while in custody; taken to Bellevue and mentally evaluated; subjected to photograph imaging and "attempted" iris scanning; and it appears just "punished" in general as a pre-trial detainee. See

---

[4] Plaintiff's assertion that the video taken by Detective Grimes was "modified" is baseless and absurd. Detective Grimes' video captures the same events as the video Plaintiff has incorporated in her Complaint. See Exhibit C at 05:50-07:50 and Exhibit D at 00:00-00:39 attached to the Declaration of Joy T. Anakhu. The Video taken by Detective Grimes is the complete, unedited/modified form as he captured it on September 17, 2013.

Pl's Opp. 17:12-17. As a preliminary matter, conclusory allegations of mental torture or generally being "punished" without more, cannot sustain an excessive force claim and must be disregarded. See Boley v. Durets, 2013 U.S. Dist. LEXIS 177862 at 27-28 (E.D.N.Y. Dec. 10, 2013) (mere assertions of "physical injuries" and "serious permanent personal injuries of body and mind" arising out of "forceful contact" insufficient to state an excessive force claim without specific allegations of the type of injuries suffered). Further, the use of photography and a *failed attempt* to have Plaintiff submit to an iris-scan cannot be seen as excessive force. Additionally, Defendants note that any such claim would be subsumed under a claim for false arrest, which in this case was proper based on Plaintiff's violation, inter alia, of the sound amplification statue. Lastly, as noted in Defendants' moving papers, the use of photography, fingerprinting and other tools by law enforcement is constitutionally permissible in verifying the identity of arrestees and Plaintiff cannot plausibly show otherwise. See Pl's Opp. 27:15-23;  see also Maryland v. King, 133 S. Ct. 1958, 1975 (2013).

As it relates to Plaintiff's disdain for Bellevue hospital, Plaintiff admits that she didn't have an issue with being mentally evaluated; her issue is that she wanted to be evaluated at Lenox Hill Hospital.  See Am. Compl. ¶ 60.  Further, Plaintiff does not have a right to be evaluated at a facility of her choosing.  See Joyner v. Greiner, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) ("It is well established that a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").[5] Even if she did, this would not amount to excessive force.

---

[5] Defendants note that Plaintiff has not alleged facts that would support a claim for deliberate indifference to a medical need/condition.  See Farmer v. Brennan,  511 U.S. 825, 837 (1994) (In order for an official to "know[] of and disregard[] an excessive risk to [plaintiff's] health or safety[,] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Finally, Plaintiff's conclusory assertion that she was "physically abused" by Officer Byrnes when he immediately re-handcuffed her and placed her against a wall does not rise to a constitutional violation.  Plaintiff concedes in her complaint that her interaction with Officer Byrnes came after she became irate and uncontrollable with another officer at the precinct. See Am. Compl. ¶¶ 64-65.  The incident of securing her to the wall, in order to apply handcuffs was but a split second and Plaintiff only alleges pre-existing emotional injuries such as Post Traumatic Stress Disorder.  See Russo v. Port Auth., 2008 U.S. Dist. LEXIS 79032, 2008 WL 4508558, at *5 (E.D.N.Y. Sept. 30, 2008) ("no relief for headache and post-traumatic stress disorder"); see also Johnson v. Cnty. of Nassau, 2010 U.S. Dist. LEXIS 101752, at *9 (E.D.N.Y. Sep. 27, 2010) ("Plaintiff can obtain no relief for purely psychological injuries, even if Plaintiff establishes proximate cause.").  The medical records Plaintiff has attached to her complaint confirm that any injuries she allegedly suffered are emotional in nature.  See Am. Compl. Exhibit 3.  Based on the foregoing, any excessive force claim must be dismissed.

### PLAINTIFF'S CLAIM FOR ASSAULT AND BATTERY, AS WELL AS NEGLIGENT/INTENTIAL INFLICTION OF EMOTIONAL DISTRESS ("NIED", "IIED") MUST BE DISMISSED

Plaintiff's Assault and Battery claims must be dismissed as they stem from her arrest and subsequent processing on September 17, 2013.  See Pl's Opp. 44:10-14. As discussed *supra,* and in Defendants' moving papers, Plaintiff's arrest was lawful and "[o]fficers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest."  Johnston v. Port Auth. of N.Y. & N.J., 2011 U.S. Dist. LEXIS 82815, at *36 (E.D.N.Y. July 28, 2011). Additionally, as discussed *supra*, any interaction Plaintiff had while in custody was reasonable and does not give rise to a constitutional violation.  Plaintiff's allegation that

Officer Cox's "erratic" driving somehow amounts to an assault and battery is without merit. Plaintiff pleads no facts that would suggest Officer Cox in any way engaged in tortious menacing or unwanted physical contact with her.  See United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993).

Likewise Plaintiff's claims for IIED and NIED must be dismissed. Plaintiff's Complaint and opposition papers fail to show that the officers' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983).  Plaintiff's opinion that the officers are "indeed psychopaths," "mentally insane" and "need to be treated for their illness" is not enough for these claims to survive a motion to dismiss.  See Pl's Opp. 24:12-13.  Additionally, Plaintiff has failed to rebut the premise that any such claims would be subsumed within a claim for false arrest, excessive force or assault and battery.  See  Universal Calvary Church v. City of New York, 2000 U.S. Dist. LEXIS 17037, at *36 (S.D.N.Y. Nov. 27, 2000) ("Plaintiffs' claims for …emotional distress are subsumed under their excessive force, assault and battery, and unlawful imprisonment claims.").

**ANY CLAIMS PREDICATED ON EITHER THE FIRST AMENDMENT OR A CONSPIRACY THEORY MUST BE DISMISSED**

Plaintiff's only First Amendment claim appears to be her challenge to the New York City's Sound amplification statute. First, Plaintiff argues that the sound amplification statute did not apply to her because the public was enjoying what she had to say.  See Pl's Opp. 28:14-16. Defendants note that political speech, even one that is enjoyed by the public, is subject to this statute.  See McMillan v. City of New York, 2009 U.S. Dist. LEXIS 7956, at *25 (E.D.N.Y. Feb. 4, 2009).  Second, Plaintiff argues in conclusory fashion that the amplified sound

ordinance "needs to be modified" and that it would be better for the public "if a permit was not required." See Pl's Opp. 29:7-9. As Defendants noted in their moving papers, the New York City Sound Amplification statue has been repeatedly upheld as constitutional as it is content-neutral and narrowly tailored to serve the significant governmental interest of New Yorkers. See Marcavage v. City of New York, 918 F. Supp. 2d 266 (SDNY 2013).  Based on the foregoing and on Defendants' initial papers, any claims predicated on the First Amendment should be dismissed.

Lastly, any claim predicated on a conspiracy theory must be dismissed.  Plaintiff has not adequately challenged the arguments put forth by Defendants' concerning any claim for conspiracy; this includes but is not limited to, Defendants' assertion that Plaintiff's conspiracy claim would be barred by the "intra-corporate conspiracy" doctrine.  Danielak v. City of New York, 2005 U.S. Dist. LEXIS 40901, at *42 (E.D.N.Y. Sep. 26, 2005).  Based on these deficiencies defendants rely on the arguments outlined in their moving papers and respectfully refer the Court to said papers for their position on this issue.

## PLAINTIFF'S ABUSE OF PROCESS AND CONDITIONS OF CONFINEMENT CLAIMS MUST BE DISMISSED

Defendants note that Plaintiff offers no specific or additional facts in her opposition that could maintain an Abuse of Process claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (noting that a Complaint satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Plaintiff merely asserts in opposition that this claim should survive because "governmental entities … were using the powers bestowed in them" to commit constitutional violations. See Pl's Opp. 22:12-15.  Plaintiff also summarizes that she has "clearly

plead" that process was employed and that there was a collateral objective. Id. 22:3-7. As Plaintiff has failed to set forth any facts to suggest that officers employed legal process to compel Plaintiff's performance or forbearance of a particular act; and her arrest was premised on probable cause, Defendants rely on their arguments outlined in their moving papers and respectfully refer the Court to said papers for their position on this issue.

Plaintiff's Conditions of Confinement claim must be dismissed as she fails to allege facts that would suggest her confinement was unconstitutional. Plaintiff's citation to a medical note is unavailing as it does not identify Plaintiff as being "physically disabled." See Am. Compl., Exhibit 19 (purported note from Ernest Anthony Pillado, MD dated October 30, 2013, noting Plaintiff as having "issues with balance and hips and finds it necessary to use a hand truck or cart so she can carry her luggage without falling"). This note comes after the incident and Plaintiff pleads no facts that she conveyed to the officers that she had a "balancing" or "hip" issue.   Further, the note is limited to instances where Plaintiff is required to *carry her luggage*. Id. There are no facts to suggest that Plaintiff was asked by officers to carry anything, let alone her luggage, that would make this note even remotely relevant to the claims in this action.

Additionally, as noted above and in Defendants' moving papers, the use of photography during arrest processing is lawful, See Maryland v. King, 133 S. Ct. 1958, 1975 (2013); and her length of detention was constitutionally permissible.  See Lebowitz v. City of New York,  606 Fed. App'x. 17, 18 (2d Cir. 2015) (summary order) (finding any pre-arraignment delay the plaintiffs experienced was presumptively reasonable where plaintiffs were arraigned within 48 hours). Finally, plaintiff's argument that Officer Byrnes rushed out of the courthouse after Plaintiff was already released cannot amount to a condition of confinement

claim as it is clear that Plaintiff was no longer in custody and free to leave. Based on the foregoing this claim must be dismissed.

### PLAINTIFF'S MANDATORY DUTY ARGUMENTS FAIL

Any claim predicated on a mandatory duty theory should be dismissed. As noted in Defendants' moving papers, Plaintiff must identify an interest protected by the Due Process Clause. Harrington v. Cnty. of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010). Plaintiff's complaint and opposition papers fail to do just that. Yet despite this failure Plaintiff first alleges that Detective Lee owed her a duty to issue her a permit for amplified sound on September 17-18, 2014. This is inaccurate as Plaintiff has failed to adequately plead or show that she satisfied the statutory requirements to secure a permit on September 17-18, 2014. See NYC Administrative Code §10-108(a)(e)-(h). This is evidenced, inter alia, by Plaintiff's utter failure to accurately fill out the permit application or to identify the "event location" where plaintiff planned to use her sound amplification device. See Am. Compl., Exhibit 18. In fact, in her opposition, Plaintiff actually admits that she did not fill out the application correctly and notes this failure was an error that happens to her frequently due to her disability. See Pl' Opp. 39:5-11.

Likewise, and as discussed *supra*, officers did not owe Plaintiff a duty to issue her a desk appearance ticket, summons or citation. See N.Y. Crim. Proc. Law § 140.10(1)(a); see also Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280, at *43 (S.D.N.Y. Mar. 31, 2016). Further, and as noted above, Plaintiff cannot claim a duty by officers to make an accommodation once she is released from custody (see Pl's Opp. 33:10-23) or for a "disability" they were never aware of and that to date, Plaintiff continues to keep vague and ambiguous. Additionally, Plaintiff's generic and conclusory allegation that she was "discriminated against" because she was affiliated with Occupy Wall Street, should be dismissed, inter alia, on Iqbal and

Twombly pleading grounds. See Pl's Opp. 32:12-20.   Plaintiff's assertion that she repeatedly heard "She's with Occupy" from non-defendant officers, when essentially she admits that "she's with Occupy" cannot set forth a constitutional violation.

As noted above, Plaintiff's time in custody cannot be seen as excessive as she admits that she was in custody for less than 24 hours.   See Pl's Opp. 30:8;   see Lebowitz v. City of New York,   606 Fed. App'x. 17, 18 (2d Cir. 2015).   While officers must bring an arrestee before a criminal court without unnecessary delay, they cannot be held responsible for delays perpetuated by the arrestee or when all recording and other preliminary duties are not complete. See NY CPL §140.20.   Here, Plaintiff admits that she was difficult with officers as they attempted to process her arrest and even refused to undergo all administrative processing procedures.   See Am. Comp. ¶¶ 63-64. Further, Plaintiff should not be able to complain about being taken to Bellevue when she clearly did not have an issue with going to the hospital.   As noted above, Plaintiff's issue with Bellevue was not that she was taken there, rather that she was not taken to the hospital of her choosing. See Am. Compl. ¶ 60.

Finally, "[p]risoners do not have an absolute right to make phone calls." Blackshear v. Coughlin, 1996 U.S. Dist. LEXIS 22081, at *7 (N.D.N.Y. Jan. 18, 1996); see also Hodge v. Ruperto, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) ("[T]here is also no constitutional requirement that a detainee be permitted a telephone call upon completion of booking formalities.").   Based on the foregoing, Plaintiff's assertion that she was not able to speak to her husband does not give rise to a constitutional violation as officers did not owe her such a duty. Regardless, Plaintiff admits that when she was interviewed at Bellevue an offer was made to call her husband (Pl's Opp. 32:3-5) and it is without dispute that Plaintiff was represented at the time of her arraignment by counsel.   See Am. Compl ¶ 69.

**PLAINTIFF HAS WITHDRAWN HER FALSE LIGHT AND DEFAMATION OF CHARACTER CLAIMS. ADDITIONALLY ANY PRIVACY CLAIM LACKS MERIT AND SHOULD ALSO BE DISMISSED**

Defendants note that Plaintiff in her opposition papers has withdrawn her false light and defamation of character claims. See Pl.'s Opp. 41:4-8. Therefore based on plaintiff's abandonment and the arguments set forth in Defendants' moving papers, defendants respectfully request that these claims be dismissed with prejudice. In place of these claims Plaintiff has asked the court to replace them with the "Federal Privacy Act." Id. Plaintiff has not outlined what specific cause of action she intends to invoke from such an act therefore defendants are left to guess what claim plaintiff actually intends to assert. If Plaintiff intends to assert "The Privacy Act of 1974" this claims must also be dismissed. "Congress passed the Privacy Act of 1974 (the "Privacy Act") in response to increasing concern over the federal government's accumulation of personal information." Stoianoff v. Comm'r of Motor Vehicles, 107 F. Supp. 2d 439, 442 (S.D.N.Y. 2000) (citing Pub. L. No. 93-579, 88 Stat. 1896, 5 U.S.C. § 552a). Therefore the purpose of the Privacy Act is to "safeguard individual privacy and 'promote governmental respect for the privacy of citizens' by requiring departments and agencies of the federal government to observe certain rules and procedures relating to the collection, use and disclosure of an individual's personal information." Id. Here, any claim under the Privacy Act lacks merit because it does not apply to state/local agencies or officials; it is solely limited to federal agencies. Stoianoff at *444; see also Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 441 (N.D.N.Y. 1998) (Privacy Act of 1974 provides certain privacy protections for records of individuals maintained by federal agencies and is inapplicable to state or local agencies). Based on the foregoing, any claims predicated on the "Federal Privacy Act" should be dismissed.

## PLAINTIFF'S MONELL THEORIES MUST BE DISMISSED

Plaintiff first argues that the City has an unconstitutional policy of "silencing peaceful dissent." <u>See</u> Pl's Opp. 18:9-21. To support this theory, Plaintiff points to "the mere fact that settlements … have been made in various activist cases." <u>Id</u>. Plaintiff's reliance on prior settlements fails to state a claim for municipal liability. As this Court is aware, absent the adjudication on the merits, prior legal proceedings have no evidentiary bearing in future proceedings and therefore cannot sustain a <u>Monell</u> claim. <u>See</u> <u>Simms v. City of New York</u>, 480 Fed. Appx. 627, 630 (2d Cir. 2012) (citing to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"); <u>see also</u> <u>Rasmussen v. City of New York</u>, 766 F. Supp. 2d 399, 409–10 (E.D.N.Y. 2011) (the mere fact that a lawsuit has been filed against an officer fails to "show that there has been *any* violation of constitutional rights, so there is no evidence of the predicate fact underlying the alleged custom and policy").

Further, Plaintiff's generic assumption that individuals are arrested without "sufficient evidence" and "without probable cause" cannot maintain a <u>Monell</u> theory. <u>See</u> Pl's Opp. 19:1-2. Plaintiff's argument appears to be based on the illegitimate conclusion that arrests are generally unlawful in the first place. As this Court is aware, criminal charges may be dismissed for any number of reasons, many of which have no implications on the lawfulness of the underlying arrest. This includes, but is not limited to, convenience or abdication of responsibilities but also mercy in light of the arrestee's prior arrest history and/or the severity of the violation of crime.  This is particularly true in the context of many arrests that took place during Occupy Wall Street demonstrations.  Courts in this Circuit and at the state level have repeatedly found Occupy Wall Street arrests were proper.  <u>See</u> <u>e.g.</u>,  <u>People v. Nunez</u>, 36

Misc.3d 172, 183-84 (N.Y. City Crim. Ct. 2012) (arrests of approximately 200 protestors in Zuccotti Park on November 15, 2011 was lawful); Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) (arrest of over 700 protestors on the Brooklyn Bridge on October 1, 2011 was lawful); Caravalho v. City of New York, 2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. Mar. 31, 2016) (arrest of approximately 100 protestors on March 17, 2012 was proper); see also Thimmesch v. City of New York, 12 cv 8882 (KBF), 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. Apr. 9, 2013) (same); Carpenter v. City of New York, 984 F. Supp. 2d 255 (S.D.N.Y. 2013) (arrest of approximately 20 protestors for trespassing in a Citibank was proper);   Pesola/Allen v. City of New York, No. 15-cv-1917, No. 15-cv-1918 (PKC)(SN), 2016 U.S. Dist. LEXIS 42977, at *1 (S.D.N.Y. Mar. 30, 2016) (finding plaintiffs' arrests were proper during six month anniversary of Occupy Wall Street).

Therefore, Plaintiff has failed to allege any facts from which the Court could make any reasonable inferences that arrests made by the police are generally without "sufficient evidence" or "probable cause." See  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.").

Next, Plaintiff improperly relies on her arrest and subsequent lawsuit as evidence that the City of New York has unconstitutional policies, practices and customs. See Pl's Opp. 19:2-15; 20:10-15. A "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]."  Hayes v. Perotta, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010); see also City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability

under <u>Monell</u> . . . .")  Likewise, two incidents together are insufficient to establish a custom or practice.  <u>See</u> <u>Giaccio v. City of New York</u>, 502 F. Supp. 2d 380, 389 (S.D.N.Y. 2007).

Finally, plaintiff's <u>Monell</u> theory concerning a failure to train, supervise or discipline must also be dismissed.  Plaintiff has failed to identify "a specific deficiency in the city's training program' and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation.'"  <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004).  Additionally, outside of conjecture, Plaintiff fails to plead facts that would suggest officers have a history of mishandling the issues she alleges or that training or supervision will make these issues less likely. <u>Jenkins v. City of New York</u>, 478 F.3d 76, 94 (2d Cir. 2007).  Based on the foregoing plaintiff's <u>Monell</u> theories must be dismissed.

## PLAINTIFF HAS FAILED TO ADDRESS THE QUESTION OF PERSONAL INVOLVEMENT FOR SEVERAL DEFENDANTS

Although given the opportunity, Plaintiff has failed to address why several Defendants have been named in this action despite any facts to show they participated in any alleged constitutional violations.[6]  This includes former Mayor Michael Bloomberg and former New York City Police ("NYPD") Commissioner Raymond Kelly. It appears Mr. Bloomberg and Mr. Kelly's only transgressions were that they were then Mayor and NYPD Commissioner at the time plaintiff was arrested. <u>See</u> Am. Compl. ¶11; <u>see also</u> <u>Cipriani v. Buffardi</u>, 2007 U.S. Dist. LEXIS 11727, 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the

---

[6] Plaintiff is incorrect in her assertion that defendants have not challenged her failure to intervene claim. This claim is addressed throughout defendants' moving papers, including pages 5, 10, and 13. This claim is also addressed herein.

defendant did to the plaintiff.").  Based on the foregoing, theses officials should be dismissed from this action.

Likewise, Plaintiff also fails to plausibly assert that Detective Grimes, Officer Cox or James Conroy were personally involved in any alleged constitutional violation. As noted in Defendants moving papers, Plaintiff's opinion of Officer Cox's driving does not amount to a constitutional violation. See Jabbar v. Fischer, 683 F.3d 54, 58 (2d Cir. 2012).   Additionally, the allegation that Detective Grimes was present and filmed the interaction also does not give rise to a violation; nor does plaintiff's failed communication with James Conroy.  Furthermore, there are no facts to suggest that these individuals could be held liable on a failure to intervene theory. Plaintiff's arrest was lawful based on her conduct and she has failed to show that these individuals had any realistic opportunity to intervene in order to prevent any alleged constitutional harm from occurring.   Based on the foregoing, these individuals should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss

Plaintiff' complaint with prejudice, and grant such other and further relief as the Court deems

just and proper.

Dated:          New York, New York
                September 9, 2016

                                ZACHARY W. CARTER
                                Corporation Counsel of the City of New York
                                *Attorney for Defendants*
                                100 Church Street
                                New York, New York 10007
                                (212) 356-2323

                                By: _____/s/_____
                                       Joy T. Anakhu
                                       Senior Counsel
                                       Special Federal Litigation Division

TO:   The Honorable Jesse M. Furman
      United States District Judge
      Southern District of New York
      40 Foley Square
      New York, NY 10007

      Nadine Hays
      *Pro Se Plaintiff*
      370 Highland Hills Drive
      Camarillo, CA 93010