```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/28/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                :
NADINE HAYS,                                    :
                                                :
                              Plaintiff,        :        14-CV-10126 (JMF)
                                                :
              -v-                               :        OPINION AND ORDER
                                                :
CITY OF NEW YORK, et al.,                       :
                                                :
                              Defendants.       :
                                                :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Nadine Hays, proceeding *pro se*, brings a veritable potpourri of civil rights claims against the City of New York (the "City"), officers of the New York City Police Department ("NYPD"), and other City officials arising principally out of her arrest for using an unauthorized sound amplification device on the anniversary of the Occupy Wall Street protests. Defendants who have been served and appeared now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Hays's claims in their entirety. (Docket No. 43). For the reasons stated below, Defendants' motion to dismiss is GRANTED, and the First Amended Complaint (the "Complaint") is dismissed in its entirety.

## BACKGROUND

The following facts — which are taken from the Complaint, materials it incorporates (including a video of the primary incident at issue), and matters of which the Court may take judicial notice — are construed in the light most favorable to Hays. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).[1]

---

[1] Hays incorporates by reference a video of the primary incident at issue. (Docket No. 34 ("First Am. Compl.") ¶ 35 n.1). Although that video is no longer available at the youtube link

On September 17, 2013, the second anniversary of the Occupy Wall Street movement, Hays set up an "educational presentation" at Zuccotti Park in New York City. (Docket No. 34 ("First Am. Compl.") ¶¶ 26-30). She brought with her various materials, including "a portable amplification speaker and microphone, a plasma screen monitor, a deep cycle battery, an inverter, a computer, and a hand truck." (*Id.* ¶¶ 27). A police officer approached Hays to ask her if she had a permit to use an amplification device, to which she responded: "Yes, it's called the First Amendment to the U.S. Constitution." (*Id.* ¶ 31). According to Hays, she had case law with her showing that her actions were protected by the First Amendment and that no permit was necessary, but the police officers at the scene "refused to talk to [her]" or "listen to [her]." (*Id.* ¶¶ 33-34). When Officers Dennis Byrnes and Kino Cox from the Bronx Task Force arrived on the scene, they bound Hays's wrists with plastic zip-lock ties and took her into custody. (*Id.* ¶¶ 40, 44). Hays alleges that this caused her "excruciating pain," prompting her to "scream in agony" and "cry uncontrollably." (*Id.* ¶¶ 40-42). The Officers also confiscated Hays's presentation materials and other personal possessions that she had with her at the time. (*Id.* ¶ 43). Hays was transported to the Manhattan Detention Complex, where Officers took her picture and fingerprints and charged her with operating a sound production device in a public area, refusing to move, and obstruction of governmental administration. (*Id.* ¶ 47, 63; *id.* Ex. 12 ("Charging Doc.")). Thereafter, she was brought before a judge and released without bail. (First Am. Compl. ¶¶ 66-69).[2] After her release, Hays recovered her credit cards and driver's license

---

that she provides, Defendants have submitted a copy of the video (Docket No. 45 ("Defs.' Mem.") Ex. C), and Hays does not appear to dispute that it is the same as the video upon which she relied. Accordingly, the Court may — and does — rely on it.

[2]   At some point, Hays was also taken to Bellevue Hospital, where she received a medical and psychological evaluation. (*Id.* ¶¶ 56-61). She alleges that she "lost track of the time" while waiting at the hospital, but was there for "at least 8-10 hours." (*Id.* ¶ 61).

2

from the police station and was given receipts for her other items. (*Id.* ¶¶ 72-74). When Hays tried to recover the rest of her property the next day, she was informed that it had been labeled "arrest evidence" and could not be returned until a later date. (*Id.* ¶¶ 80-81). She made a separate trip back to New York City (presumably from her home in California) to recover the remainder of her property, two items of which she alleges were lost or damaged. (*Id.* ¶ 82).

The criminal charges against Hays were dropped in April 2014. (*Id.* ¶ 83). Later that same year, in advance of the third anniversary of the Occupy Wall Street protests, Hays applied for an amplification permit. (*Id.* ¶ 86). Detective Rick Lee first told her that she had been granted the permit, but when she went to the police station to pick it up she was told that her application had actually been denied. (*Id.*; *id.* Ex. 18). Hays brings a litany of claims arising from both incidents, including claims for false arrest and imprisonment, unlawful seizure, excessive force, unlawful conditions of confinement, violation of the First Amendment, conspiracy to interfere with her civil rights, and violations of privacy. Hays alleges that, as a result of her arrest and detention, she suffers from Post Traumatic Stress Disorder, short term memory loss, tangential thoughts, and panic attacks. (First Am. Compl. ¶¶ 22, 81, 102-104).

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Hays's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, because Hays is proceeding *pro se*, her Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nonetheless, a *pro se* litigant must still state a plausible claim for relief. Put another way, the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y. City Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks, citation, and alterations omitted).

## DISCUSSION

Hays brings at least twenty claims against the City and the individual Defendants. Count One is for false arrest and imprisonment; Count Two is for unlawful seizure; Count Three is for excessive force; Count Four is for unconstitutional policies, practices, and customs; Counts Five and Six are for negligent failure to train, supervise, and investigate; Count Seven is for violations of the First Amendment; Count Eight is for abuse of process and unequal protection of the law; Count Nine is for intentional and negligent infliction of emotional distress; Count Ten is for cruel and unusual conditions of confinement; Count Eleven is for fingerprinting, photographing, and iris scanning without a warrant; Count Twelve alleges the existence of an unconstitutional ordinance; Count Thirteen is for failure to discharge a mandatory duty; Count Fourteen is for trespass to chattels; Count Fifteen is for conspiracy to interfere with civil rights; Counts Sixteen

4

and Nineteen are for defamation of character and false light; Counts Seventeen and Eighteen are for assault and battery; and Count Twenty is for failure to intervene. The Court will address the claims in turn, except insofar as multiple claims can be addressed together.

## A. False Arrest, False Imprisonment, and Similar Claims

Hays's claims for false arrest, false imprisonment, and abuse of process turn on the propriety of her arrest. As a matter of law, those claims fail if there was probable cause to arrest and prosecute Hays for an offense. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014). Probable cause to arrest exists if an arresting officer has actual "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A court should consider the "totality of the circumstances" in evaluating whether the "facts available to the officer at the time of arrest" meet that bar. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks omitted). Significantly, it is enough that probable cause existed, and — at least for purposes of a false arrest claim — it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *accord Figueroa v. Mazza*, 825 F.3d 89, 99-100 (2d Cir. 2016). Moreover, even in the absence of probable cause, a police officer is entitled to qualified immunity if the probable cause determination was objectively reasonable — that is, whether there was "arguable" probable cause to arrest. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

Hays alleges that the Officers lacked probable cause to arrest her because a document from the New York State Unified Court System states "not an arrest charge, [a]rraignment

5

charge" with respect to two of the three charges brought against her: use of a sound amplification device without a permit and refusal to move. (First Am. Compl. ¶ 109; *see* Charging Doc.). That may be true, but it is irrelevant. By statute, violation of the sound amplification ordinance is punishable by fine, imprisonment, or both, *see* N.Y.C. Admin. Code § 10-108(j)(1), and a police officer may arrest a person for "any offense when he has probable cause to believe that such person has committed the offense in his presence," *McMillan v. City of New York*, No. 03-CV-626 (SLT) (LB), 2009 WL 261478, at *8 (E.D.N.Y. Feb. 4, 2009) (internal quotation marks and alteration omitted); *see also* N.Y. Penal Law § 10.00 (defining "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by . . . local law or ordinance."). Regardless, the third charge (which was labelled "arrest charge" on the charging document) was for "Obstruction of Governmental Administration," in violation of Section 195.05 of the New York Penal Law. (Charging Doc.). And there was plainly probable cause (and certainly *arguable* probable cause) for the Officers to arrest Hays for that offense after she made it clear to them that she did not have the permit for sound amplification, as required by the City ordinance, and continued to use her portable speaker and microphone after the Officers directed her to cease and desist. (First Am. Compl. ¶¶ 32-35; Defs.' Mem. Ex. C, at 00:50-06:31). In short, because there was probable cause to arrest Hays, her false arrest, false imprisonment, and abuse of process claims are dismissed.

To the extent that Hays's other claims — including her claims for unlawful seizure and warrantless fingerprinting, photographing, and iris scanning (First Am. Compl. ¶¶ 116-19, 125, 213-219) — are premised on seizure of her person (rather than her property), they fail for the same reasons. *See, e.g.*, *Jackson v. City of New York*, 29 F. Supp. 3d 161, 178-79 (E.D.N.Y. 2014) (considering claims for false arrest, false imprisonment, and seizure of the person

together). Additionally, it is well established that "the Fourth Amendment allows police to take certain routine administrative steps incident to arrest — i.e., booking, photographing, and fingerprinting." *Maryland v. King*, 133 S. Ct. 1958, 1977 (2013) (internal quotation marks and alterations omitted); *see also* N.Y. Crim. Pro. Law § 160.10(1) (mandating that a person arrested for a felony or a misdemeanor be fingerprinted). The Court need not address whether iris scanning qualifies as such a "routine administrative step[]" because Hays concedes in her Complaint that no iris scan was actually performed. (First Am. Compl. ¶ 64; Defs.' Mem. 5 n.4). Accordingly, all of Hays's claims based on seizure of her person — whether for false arrest, false imprisonment, or otherwise — are dismissed.

**B. Unlawful Seizure and Related Claims**

Hays's unlawful seizure claims are otherwise premised on the confiscation of her property at the time that she was arrested, including "irreplaceable bills[,] . . . [her] cell phone, computer, GPS, car battery, power inverter, make-up suitcases, DVD's, papers, plasma screen television, projector, power strip, and hand truck." (First Am. Compl. ¶¶ 43, 119-122). It is well established that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Nevertheless, the Defendant Officers were plainly permitted to seize the property in Hays's possession at the time of her lawful arrest and to then retain evidence of her alleged crimes pending conclusion of the criminal proceedings. *See United States v. Herron*, 18 F. Supp. 3d 214, 223 (E.D.N.Y. 2014). They were also entitled to retain Hays's "personal effects" for "safekeeping" for the duration of the custodial arrest. (First Am. Compl. Ex. 17 ("Property Vouchers")). *See Herron*, 18 F. Supp. 3d at 224; *see also United States v. Cancel*, 167 F. Supp. 3d 584, 595-96 (S.D.N.Y. 2016).

To the extent that Hays alleges that Defendants unlawfully retained some of her personal property after the arrest, the claim would arise under the Due Process Clause of the Fourteenth Amendment rather than the Fourth Amendment.  *See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004).  To state such a due process claim, however, a plaintiff must demonstrate either that: (1) she "was never given proper notice of the post-deprivation state law remedies" or (2) "the post-deprivation remedies available under state law were inadequate."  *Sommerville v. Wright*, No. 12-CV-165 (KAM) (JMA), 2014 WL 794275, at *4 (E.D.N.Y. Feb. 25, 2014) (internal quotation marks omitted).  Hays does neither here.  She concedes that she was given vouchers for her property after she was released and does not allege that those vouchers were legally insufficient.  (First Am. Compl. ¶¶ 73-74; Property Vouchers 2, 4, 7, 9, 14).  And she makes no claim that her post-deprivation remedies were inadequate.  (First Am. Compl. ¶¶ 116-125).

For substantially the same reasons, Hays's state law claim for trespass to chattels also fails.  To make out a claim for trespass to chattels under New York law, plaintiffs must allege that "(1) defendants acted with intent, (2) to physically interfere with (3) plaintiff['s] lawful possession, and (4) harm resulted."  *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 368 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 4 (2d Cir. 2010).  To satisfy the intent element, "the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result."  *Id.* at 368-69.  Here, Hays fails to allege any facts in support of her conclusory assertion that retention of personal property was "intentional." Moreover, she does not even name as defendants the Officers who would have been responsible for inventorying, mislabeling, and retaining her property.  (First Am. Compl. ¶¶ 80-82). Accordingly, her trespass to chattels claim must be and is dismissed.

8

Finally, Hays claims that seizure of her hand truck violated the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (First Am. Compl. ¶ 124), but that claim fails on multiple grounds. First, there is no individual liability under the ADA. *See, e.g.*, *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007). Additionally, she fails to allege facts plausibly suggesting she was "disabled" within the meaning of the ADA, that the arresting Officers were aware of any disability, that use of the hand truck constituted a "reasonable accommodation," or that she suffered injury or indignity as a result of the Officers' conduct. *See, e.g.*, *Woods v. City of Utica*, 902 F. Supp. 2d 273, 280 (N.D.N.Y. 2012) ("An arrestee can establish liability under the ADA . . . by showing defendants failed to provide a reasonable accommodation for his disability during the course of the arrest and post-arrest, causing him to suffer greater injury or indignity than other arrestees." (internal quotation marks omitted)). Hays's claim under the ADA is therefore dismissed as well.

**C. Excessive Force, Assault and Battery, and Similar Claims**

Next, Hays alleges two discrete incidents of excessive force: one during her arrest, when Officer Byrnes "tightly cinched the plastic zip-lock on [her] very arthritic wrists," and one while she was in custody, when Officer Byrnes "threw [her] up against a wall" and dragged her "backwards by the handcuffs." (First Am. Compl. ¶¶ 127-28). The former is analyzed under the Fourth Amendment, *see Graham v. Connor*, 490 U.S. 386, 395 (1989), while the latter is analyzed under the Due Process Clause of the Fourteenth Amendment, *see, e.g.*, *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016). For present purposes, however, the incidents can be treated together because, to be actionable under either Amendment, the conduct at issue must be "sufficiently serious . . . to reach constitutional dimensions." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted); *see Graham*, 490

9

U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks and citation omitted)).  In the case of allegedly tight handcuffing, that requires a plaintiff to plead and prove "some injury beyond temporary discomfort."  *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (internal quotation marks omitted).  The injuries "need not be severe or permanent," *Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005), but they must be more than *de minimis*, *see Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008); *see also Esmont v. City of New York*, 371 F. Supp. 2d 202, 214-15 (E.D.N.Y.2005).

Applying those standards here, Hays's excessive force claims fall short.  First, with respect to the allegedly tight handcuffing, she claims only to have been in pain until the handcuffs were removed (First Am. Compl. ¶ 127), and does not allege any "specific physical injuries."  *Boley v. Durets*, No. 12-CV-4090 (ARR) (JO), 2013 WL 6562445, at *8–9 (E.D.N.Y. Dec. 10, 2013).  And with respect to the alleged interaction with Officer Byrnes, although she claims that she was "screaming in agony and crying uncontrollably" during the incident, she repeatedly confirms that her injuries were limited to her previously existing psychological conditions.  (First Am. Compl. ¶¶ 22, 128-130, *id.* Exs. 3-4; Docket No. 48 ("Pl.'s Opp'n") 16-18).  Accordingly, Hays's excessive force claims against Officer Byrnes fail as a matter of law.  *See, e.g.*, *Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *7 (S.D.N.Y. Mar. 7, 2016), *reconsideration granted in part*, 2016 WL 5900217 (S.D.N.Y. July 29, 2016); *Johnson ex rel. Johnson v. County of Nassau*, No. 09-CV-4746 (JS) (MLO), 2010 WL 3852032, at *3 (E.D.N.Y. Sept. 27, 2010); *Russo v. Port Auth. of N.Y. & N.J.*, No. 06-CV-6389 (RRM) (CLP), 2008 WL 4508558, at *5 (E.D.N.Y. Sept. 30, 2008).  Her claims against other

Officers in the vicinity, for alleged failure to intervene (First Am. Compl. ¶¶ 250-252), are likewise dismissed. *See Foy v. City of New York*, No. 03-CV-7318 (HB), 2004 WL 2033074, at *3 (S.D.N.Y. Sept. 10, 2004) ("[T]here can be no failure to intervene where there was no constitutional violation.").

Hays's state law claims based on the same incidents — for assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress (First Am. Compl. ¶¶ 193-97, 241-245; *see* Pl.'s Opp'n 24-25) — must also be dismissed. First, her assault and battery claims fail for the same reasons as her excessive force claims. *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 295 (S.D.N.Y. 2015) ("Assault and battery claims, when alleged against a police officer, are evaluated like excessive force claims."); *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) ("Similar to a claim for excessive force under [Section] 1983, a state law claim for battery against a police officer in the course of an arrest requires the plaintiff to prove that the officer's use of force was excessive or objectively unreasonable under the circumstances." (internal quotation marks omitted)). Second, under New York law, a person may not bring claims for intentional infliction of emotional distress or negligent infliction of emotional distress where, as here, there are more traditional theories of tort liability available. *See, e.g.*, *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 483 (E.D.N.Y. 2016); *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 214 (E.D.N.Y. 2014). In any event, the conduct alleged by Hays is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (internal quotation marks omitted).

### D. Conditions of Confinement Claims

Hays also claims that Byrnes's conduct and the conditions of her transportation to the precinct amounted to unconstitutional conditions of confinement. (First Am. Compl. ¶¶ 198-212). "In a pretrial detainee's challenge to conditions of confinement under the Fourteenth Amendment, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Patterson v. City of New York*, No. 11-CV-7976 (DLC), 2012 WL 3264354, at *5 (S.D.N.Y. Aug. 9, 2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "If the conditions do not amount to punishment, allegations that defendants have denied plaintiff access to basic human needs are evaluated under a standard of deliberate indifference." *Milo v. City of New York*, 59 F. Supp. 3d 513, 524 (E.D.N.Y. 2014). Hays's claims fail under either standard. With respect to the former, she fails to allege (except in the most conclusory of terms (*see, e.g.*, First Am. Compl. ¶ 203)) that the Defendant Officers acted "(1) with punitive intent, [and] (2) personally engaged in conduct that caused the challenged conditions of confinement." *Turkmen v. Hasty*, 789 F.3d 218, 238 (2d Cir. 2015). And under the deliberate indifferent standard, Hays fails to plausibly allege, as she must, that "objectively, the deprivation [she] suffered was 'sufficiently serious that [s]he was denied the minimal civilized measure of life's necessities.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)). The deprivations that Hays does allege — namely, the use of zip-tie handcuffs, the lack of an available seatbelt in the paddy wagon, being denied the right to make a phone call, and evaluation at Bellevue Hospital — do not even come close to meeting that standard. *See, e.g.*, *Stevens v. City of New York*, No. 12-CV-3808 (JMF), 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013), *aff'd*, 541 F. App'x 111 (2d Cir. 2013). Accordingly, Hays's conditions of confinement claims must be and are dismissed as well.

### E. First Amendment and Conspiracy Claims

Next, Hays alleges that Defendants violated and conspired to violate her First Amendment rights to freedom of speech and to gather for redress of grievances. (First Am. Compl. ¶¶ 171-84). In particular, she brings both facial and as-applied challenges to the City's permitting process for amplified sound, and accuses Defendants of conspiring to "silence [her] and add [her] name to a list of all individuals in the United States that exhibit dissent." (*Id.* ¶ 184). Hays's facial challenge to the ordinance fails, however, because the "time, place, and manner" restrictions in question have been repeatedly upheld by courts in this Circuit, and Hays fails to provide any reason why the outcome in her case should be any different. *See, e.g.*, *Marcavage v. City of New York*, 918 F. Supp. 2d 266, 270-75 (S.D.N.Y. 2013) (finding that the permit requirement established by Section 10-108 of the N.Y.C. Administrative Code was content-neutral and that the government had a significant governmental interest, the requirement was narrowly-tailored to that interest, and plaintiffs had alternative channels of communication); *accord McMillan*, 2009 WL 261478, at *9; *see also Turley v. Police Dep't of City of N.Y.*, 167 F.3d 757, 761 (2d Cir. 1999) (affirming the district court's determination that Section 10-108 did not confer impermissible discretion on police officers). Hays's as-applied challenge — based on the claim that she was "doing a public service announcement" and that "[n]obody objected to the level of amplification" (First Am. Compl. ¶¶ 180-83, 223) — also fails, as courts have upheld application of the statute even to core political speech. *See McMillan*, 2009 WL 261478, at *9 (collecting cases). Finally, to the extent Hays brings claims based on the denial of a sound amplification permit in 2014, she fails to sufficiently allege that her application met all permitting requirements. *See* N.Y.C. Admin. Code § 10-108(a)-(h). (First Am. Compl. ¶¶ 85-87, 174-75, 179; *id.* at Ex. 18; *see* Defs.' Mem 20).

Hays's other conspiracy claims, brought pursuant to Title 42, United States Code, Sections 1983, 1985, and 1986, also fail as a matter of law. (*See* First Am. Compl. ¶¶ 171-184, 236). First, to survive a motion to dismiss on a Section 1983 conspiracy claim, a plaintiff must allege — in more than conclusory terms — an agreement between two or more state actors, concerted acts to inflict an unconstitutional injury, and an overt act in furtherance of the goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-35 (2d Cir. 2002). Here, Hays's allegations of an agreement — let alone an agreement to inflict unconstitutional injury given the Court's conclusions above with respect to Hays's underlying claims — are "strictly conclusory." *Id.* at 325. Further, to the extent that she alleges agreement among officers of the NYPD, her conspiracy claims are barred by the "intra-corporate conspiracy" doctrine, pursuant to which "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Dunlop v. City of New York*, No. 06-CV-0433 (RJS), 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008). Separate and apart from those deficiencies, Hays fails to sufficiently allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," as required to state a claim under Section 1985. *Middleton v. City of New York.*, No. 04-CV-1304 (JFB) (LB), 2006 WL 1720400, at *9 (E.D.N.Y. June 19, 2006) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see* 42 U.S.C. § 1985(3). And without a viable Section 1985 claim, Hays cannot bring a claim under Section 1986. *See, e.g.*, *Dwares v. New York*, 985 F.2d 94, 101 (2d Cir. 1993) ("Liability under [Section] 1986, which permits an action against a person who had the 'power to prevent or aid in preventing the commission of' a wrong 'mentioned in section 1985,' but who 'neglected or refused so to do,' is dependent on the validity of a claim under [Section] 1985." (alterations omitted)).

F.  **Defamation**

The Complaint also alleges claims with respect to the individual Defendants for placing Hays in a "false light" and defamation of character. (First Am. Compl. ¶¶ 237-40, 246-249). In her opposition to Defendants' motion, however, Hays appears to withdraw both claims (Pl.'s Opp'n 40-41), and for good reason. First, as Hays appears to concede, "New York does not recognize a claim of false light invasion of privacy." *Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 351 (S.D.N.Y. 2007). Second, to bring a defamation claim pursuant to Section 1983, a plaintiff must plead and prove that a government official has (1) "utter[ed] . . . a statement sufficiently derogatory to injure [the plaintiff's] reputation, that is capable of being proved false, and that [the plaintiff] claims is false," and which (2) imposed a "material . . . burden or . . . alteration of the plaintiff's status or rights." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks omitted). Additionally, the "statement must be sufficiently public to create or threaten a stigma." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). Hays alleges neither a material burden nor alteration of her status or rights nor that any statement was publicized. It follows that any defamation claim she still presses must be dismissed. *See, e.g.*, *Brooks v. Jackson*, No. 11-CV-6627 (JMF), 2013 WL 5339151, at *11 (S.D.N.Y. Sept. 23, 2013).

In her opposition to Defendants' motion, Hays tries to recast her false light and defamation claims as claims under the "Federal Privacy Act." (Docket No. 52, at 15; Pl.'s Opp'n 41). That is not enough, however, to salvage her claims. First, the law is clear that a plaintiff may not amend her complaint through her memorandum of law opposing a motion to dismiss. *See, e.g.*, *Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007). Second, and in any event, any claim pursuant to the Privacy

15

Act of 1974, 5 U.S.C. § 552a (if that is indeed what Hays means by the "Federal Privacy Act") would have to be dismissed because the statute does not provide for a private right of action against a state agency or official.  *See, e.g.*, *Stoianoff v. Comm'r of Motor Vehicles*, 107 F. Supp. 2d 439, 444–45 (S.D.N.Y. 2000), *aff'd,* 12 F. App'x 33 (2d Cir. 2001).

### G.  *Monell* Liability

Hays's final claim warranting discussion is for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (First Am. Compl. ¶¶ 132-42).[3]  Given the absence of an underlying constitutional violation, however, she cannot state a claim under *Monell*.  *See, e.g., Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . ., his . . . *Monell* claim necessarily fail[s] as well.").  Additionally, it is well established that, in order to establish a claim under *Monell*, a plaintiff must allege that the violation of her constitutional rights resulted from a municipal policy, custom, or practice.  *See Monell*, 436 U.S. at 690-91.  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."  *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion).  Here, Hays fails to allege any facts from which the Court could conclude that the City had a policy, custom, or practice that gave rise to the alleged violations of Hays's constitutional rights.  She does assert that her treatment stemmed from a "sanctioned [] policy, practice, and/or custom" and that the City failed to "properly train," "discipline," "supervise", and "monitor arrests" (First Am. Compl. ¶¶ 132-70; Pl.'s Opp'n 18-20), but she

---

[3]     The Complaint also purports to bring *respondeat superior* claims against the City (*see* First Am. Compl. ¶¶ 143-170), but it is well established that a municipality may not be held liable under Section 1983 "simply on the basis of *respondeat superior*."  *Best v. City of N*ew *York*, No. 11-CV-4475 (JMF), 2012 WL 5458054, at *3 (S.D.N.Y. Nov. 8, 2012).

16

does not allege anything to support those conclusory assertions other than her isolated personal experiences, reports that are twenty-plus years old, and unproven allegations made in other lawsuits. *See Pluma v. City of New York*, No. 13-CV-2017 (LAP), 2015 WL 1623828, at *11 (S.D.N.Y. Mar. 31, 2015) (finding that a "single recent incident" and "decade-old report" are "extremely unlikely" to give rise to *Monell* liability); *see also Simms v. City of New York*, 480 F. App'x 627, 630 (2d Cir. 2012) (summary order) (finding that citations to unrelated actions were insufficient to establish a pattern or practice). Finally, to the extent that Hays alleges a policy or custom towards "Occupiers" in 2011 and 2012, she fails to establish a "direct causal link" between that alleged policy and her own injuries one and two years later. *Pluma*, 2015 WL 1623828, at *9 (internal quotation marks omitted). For these reasons, Hays's *Monell* claims are also dismissed.

## CONCLUSION

If the sheer quantity of a plaintiff's claims could be sufficient to survive a motion to dismiss, Hays's Complaint would surely live to see another day. But even construing her pleadings liberally, her twenty some-odd claims fall well short of meeting the plausibility standard.[4] Accordingly, and for the reasons stated above, Defendants' motion to dismiss is GRANTED, and the Complaint is DISMISSED in its entirety.[5]

---

[4] To the extent that the Court has not explicitly analyzed any particular claim in the Complaint — for example, Hays's claims for unequal protection of the law or failure to discharge mandatory duties — that is because such claims are effectively duplicative of the claims discussed above. *See, e.g.*, *Zahrey v. City of New York*, No. 98-CV-4546 (DCP) (JCF), 2009 WL 1024261, at *9 (S.D.N.Y. Apr. 15, 2009) (collecting cases dismissing general due process claims as duplicative of those already discussed).

[5] Given the reasoning above, the Court sees no basis to maintain Hays's claims against the Defendants who have not yet been served or appeared — namely, Captain Mark Iocco, NYPD Attorney James Conroy, Officer Eric Grimes, former Mayor Michael Bloomberg, former Police Commissioner Raymond Kelly, and "Does 1-10" — even though they (obviously) did not join in

The only remaining question is whether Hays should be granted leave to amend her Complaint. Although leave to amend a complaint should be freely given "when justice so requires," Fed.R.Civ.P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Exercising that discretion here, the Court declines to grant Hays leave to amend the Complaint *sua sponte*. First, a district court may deny leave to amend when, as here, amendment would be futile because the problems with a plaintiff's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Second, Hays was already granted leave to amend her complaint to cure deficiencies raised in Defendants' first motion to dismiss and was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (Docket No. 28). Finally, she "has not requested permission to file a Second Amended Complaint, nor has [s]he given any indication that [s]he is in possession of facts that would cure the problems" identified in the instant motion to dismiss. *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in*

---

the motion to dismiss. (First Am. Compl. ¶¶ 11-12; Defs.' Mem. 1 n.1). The claims against those Defendants are presumably also subject to dismissal for other reasons, including failure to timely serve, *see* Fed. R. Civ. P. 4(m), and lack of personal involvement, *see, e.g.*, *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

*forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is directed to terminate Docket No. 43 and to close the case.

SO ORDERED.

Dated: February 28, 2017
       New York, New York

JESSE M. FURMAN
United States District Judge